[No. B160315. Second Dist., Div. Three. Dec. 2, 2002.]

M. B. et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Guzin & Steier and Donald H. Steier for Petitioners.

No appearance for Respondent.

Steve Cooley, District Attorney, George M. Palmer and Fred Klink, Deputy District Attorneys, for Real Party in Interest.

OPINION

**KLEIN, P. J.**—The petition for writ of mandate raises two issues of first impression: whether a California criminal grand jury has the power to issue a subpoena duces tecum; and if it does, whether such a subpoena is defective if it is served without the good cause affidavit required by Code of Civil Procedure sections 1985 and 1987.5.

We conclude California criminal grand juries have the power to issue subpoenas duces tecum, and that such subpoenas do not require good cause affidavits.

BACKGROUND

This proceeding arises out of a grand jury investigation into allegations that petitioners M.B., D.G. and M.W.,[1] three Roman Catholic priests employed by the Los Angeles Archdiocese, committed acts of child molestation.

On June 12, 2002, the Los Angeles County District Attorney served grand jury subpoenas on the archdiocese's custodian of records, seeking all documents in the archdiocese's possession or control—including "confidential personnel files"—that "relate in any way to allegations of child molestation or sexual abuse" by any of the petitioners.[2] The archdiocese produced the requested documents, which the trial court sealed because the petitioners immediately moved to quash the subpoenas.

[1] We use these initials because the superior court sealed the records in this case to protect petitioners' confidentiality.

[2] The district attorney issued three criminal grand jury subpoenas, each one requested "[a]ll documents and other materials that are in the possession, custody, or control of the Archdiocese of Los Angeles that relate in any way to allegations of child molestation or sexual abuse committed by Father _____," including "documents in the archdiocese general archives, general files, secret archives, secret files, sub secreto files or archives, personnel files, confidential personnel files, locked files, and investigative files as well as memoranda, correspondence, reports, evaluations, interviews, statements, notes, contracts, agreements,

On July 15, 2002, following extensive briefing, an in camera inspection of certain grand jury proceedings,[3] and oral argument, the trial court concluded petitioners had standing to attack the subpoenas for facial defects, but that the subpoenas were not defective for failing to meet the affidavit requirements set forth in Code of Civil Procedure section 1985, subdivision (b) (affidavit shall be served with subpoena duces tecum showing good cause and materiality) and 1987.5 (service of subpoena duces tecum is invalid without affidavit).[4]

On July 29, 2002, petitioners sought a writ of mandate from this court vacating the superior court's order denying their motion to quash and declaring that the subpoenas must be quashed as facially defective. Upon receipt of the petition for writ of mandate, we issued an order to show cause and stayed the trial court's order denying petitioners' motion to quash.

DISCUSSION

1. *Grand jury had power to issue subpoenas duces tecum.*

 a. *Common law supports the power.*

"The institution of the grand jury is deeply rooted in Anglo-American history. In England, the grand jury served for centuries both as a body of accusers sworn to discover and present for trial persons suspected of criminal wrongdoing and as a protector of citizens against arbitrary and oppressive governmental action." (*United States v. Calandra* (1974) 414 U.S. 338, 342-343 [94 S.Ct. 613, 617, 38 L.Ed.2d 561], fn. omitted.) "Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the

---

settlement agreements, confidentiality agreements, and records of payment relating in any way to allegations of child molestation and sexual abuse committed by Father ____."

[3] The trial court stated: "I have also at the request of the People read and considered a transcript of the grand jury proceedings that occurred on June 12th, 2002 which consisted essentially of an opening statement to the grand jury by Mr. Hodgeman [*sic*] outlining the People's theory of the investigation as well as the preliminary testimony of three sheriff's investigators involved in this investigation. And I did find that necessary to do in order to determine the relevancy of the items that are sought by the subpoena duces tecum that are in issue today."

[4] Although a number of other issues also were considered at this hearing (e.g., whether the subpoenas were overbroad or asked for information in violation of the attorney-client or patient-therapist privileges), none of them is raised in the present writ petition; those issues have been preserved pending resolution of this petition.

technical procedural and evidentiary rules governing the conduct of criminal trials." (*Id.* at p. 343 [94 S.Ct. at p. 617].)

 One of the grand jury's traditional powers is the ability to compel production of documentary evidence by issuing subpoenas duces tecum. In *Wilson v. United States* (1911) 221 U.S. 361 [31 S.Ct. 538, 55 L.Ed. 771], a company president claimed that a grand jury subpoena for corporate books in his possession "was unauthorized, and hence void, because it was not directed to an individual, but to a corporation." (*Id.* at p. 372 [31 S.Ct. at p. 541].) *Wilson* held the grand jury subpoena was valid, reasoning: "The power to compel the production of documents is, of course, not limited to those cases where it is sought merely to supplement or aid the testimony of the person required to produce them. The production may be enforced independently of his testimony, and it was held long since that the writ of subpoena *duces tecum* was adequate for this purpose. As was said by Lord Ellenborough in *Amey* v. *Long*, 9 East, 484, 'The right to resort to means competent to compel the production of written, as well as oral, testimony, seems essential to the very existence and constitution of a Court of common law, which receives and acts upon both descriptions of evidence, and could not possibly proceed with due effect without them.' " (*Ibid.*)

Despite this compelling common law history, petitioners contend the grand jury in this case had no power to issue a subpoena duces tecum because Penal Code[5] section 939.2[6]—the grand jury statute discussing subpoenas—refers only to requiring the attendance of witnesses, and says nothing about calling for the production of documents. Petitioners argue: "The Grand Jury in California is entirely a creation of the Legislature. Its only powers are those specifically granted to it in statute by the Legislature. It has no inherent powers," and "Without a specific grant of power from the Legislature, the Grand Jury cannot compel production of documents. Penal Code section 939.2 *excludes* that power."

Petitioners are wrong. Not only is there statutory warrant for grand jury subpoenas duces tecum, but our Supreme Court has emphatically "rejected the contention that the California grand jury [is] a 'purely' statutory body,

---

[5]All further statutory references are to the Penal Code unless otherwise specified.

[6]Section 939.2 provides: "A subpoena requiring the attendance of a witness before the grand jury may be signed and issued by the district attorney, his investigator or, upon request of the grand jury, by any judge of the superior court, for witnesses in the state, in support of the prosecution, for those witnesses whose testimony, in his opinion is material in an investigation before the grand jury, and for such other witnesses as the grand jury, upon an investigation pending before them, may direct."

Section 923, subdivision (a), allows the Attorney General to convene a grand jury and "issue subpoenas . . . to the same extent as the district attorney may do."

wholly distinct from its common law predecessor." (*People v. Superior Court* (*1973 Grand Jury*) (1975) 13 Cal.3d 430, 440, fn. 11 [119 Cal.Rptr. 193, 531 P.2d 761].)

In *Fitts v. Superior Court* (1936) 6 Cal.2d 230 [57 P.2d 510], the Supreme Court was faced with deciding the validity of a grand jury accusation, seeking under former section 758 to remove a district attorney for misconduct in office, that had been approved by only 11 grand jurors. *Fitts* noted section 758 was "silent as to the number of jurors who must concur in order to return a valid accusation. No other section of the code, nor does any statute of this state, fix the number of grand jurors who must concur in order to return an accusation. It is contended by respondent [superior] court that under such circumstances the general provisions of section 7, subdivision 17 of the Penal Code are applicable which provide that 'Words giving a joint authority to three or more public officers, or other persons, are construed as giving authority to a majority of them, unless it be otherwise expressed in the act giving authority.' " (*Fitts v. Superior Court, supra,* at p. 235.) The district attorney urged the court to look to the common law rule requiring the concurrence of at least 12 grand jurors. In reply, the superior court "argue[d] that our grand jury is not the one known to the common law, but is a statutory body . . . ." (*Id.* at p. 233.)

To resolve this issue, *Fitts* first examined the common law tradition, citing Blackstone, Edward Coke and other authorities, from which it concluded "that under the common law the grand jury could only act upon the concurrence or agreement of twelve of their number." (*Fitts v. Superior Court, supra,* 6 Cal.2d at p. 240.) *Fitts* then applied this rule to section 758, reasoning that the California grand jury is *not* a purely statutory creation. "The members of the first constitutional convention in providing for a grand jury must have had in mind the grand jury as known to the common law. This the respondents admit, but further contend that the constitutional convention of 1879 adopted an entirely different system than the common law system provided for in the Constitution of 1849. We find nothing to justify this conclusion . . . . The Constitution of 1879 did not attempt to change the historic character of the grand jury, and the system its members had in mind was evidently the same system that had come down to them from the common law. It is in no sense a statutory grand jury as distinguished from the common-law grand jury as claimed by the respondents. . . . We must conclude, therefore, that the Constitution of 1879 when it refers to the grand jury refers to it as it had always been known and understood prior thereto." (*Fitts v. Superior Court, supra,* at pp. 240-241.)

As the Supreme Court pointed out almost 40 years later, "*Fitts* . . . establishes the propriety of considering common law principles as supplementary to the applicable California statutes relating to grand juries."

*(People v. Superior Court (1973 Grand Jury), supra,* 13 Cal.3d at p. 440, fn. 11.)[7]

 b. *California statutory law also supportive.*

In addition to this authority rooted in the common law, California statutory law also authorizes the use of subpoenas duces tecum in grand jury investigations. As originally enacted in 1872, subdivision (2) of section 1326 allowed a district attorney to issue a subpoena " 'for such . . . witnesses as the Grand Jury, upon an investigation pending before them, may direct.' " In 1937, subdivision (2) was amended to read, " 'for those witnesses whose testimony, in [the district attorney's] opinion, is material in an investigation before the grand jury[, and for such other witnesses as the grand jury, upon an investigation pending before them, may direct].' " (See Historical Note, 51 West's Ann. Pen. Code (1982 ed.) foll. § 1326, pp. 791-792.)

During all this time, section 1327, which set out the appropriate form of the subpoena authorized by section 1326, provided that "[i]f books, papers, or documents are required, a direction to the following effect must be contained in the subpoena: 'And you are required, also, to bring with you the following' (describing intelligibly the books, papers, or documents required)."

Case law during this time also reflects a presumption that sections 1326 and 1327 controlled the issuance of grand jury subpoenas. (See, e.g., *Samish v. Superior Court* (1938) 28 Cal.App.2d 685, 692-693 [83 P.2d 305] [grand jury could issue subpoena duces tecum to compel production of income tax statements]; *In re Peart* (1935) 5 Cal.App.2d 469, 472-474 [43 P.2d 334] [district attorney's subpoena authority under § 1326 did not include issuing subpoena in absence of grand jury's direction to do so]; *Woody v. Peairs* (1917) 35 Cal.App. 553, 556-557 [170 P. 660] [§ 1326 gave district attorney authority to subpoena witnesses to appear before grand jury].)

---

[7]This conclusion is not undermined by *Allen v. Payne* (1934) 1 Cal.2d 607 [36 P.2d 614], cited by petitioners, which held the grand jury did not have the power to employ and compensate people to investigate crime. *Allen* found no need to rely on inherent or implied powers in that situation because the grand jury had been given express statutory authority to employ certain other people—e.g., interpreters, auditors and stenographic reporters—and "[i]t seems clear from these instances that the legislature has considered the employment of persons by the grand jury a matter to be governed by statute. In none of these cases would there have been any necessity for a grant of authority if there existed the implied power which is claimed for the body by petitioner." (*Id.* at pp. 608-609.)

As part of a major recodification of the grand jury statutes in 1959, the Legislature deleted subdivision (2) of section 1326, replaced it with a new version that said nothing about grand jury investigations,[8] and enacted section 939.2, which specifically addresses the issuance of grand jury subpoenas, but only discusses witnesses and says nothing about documents. However, the 1959 recodification act expressly declared that it intended to make no substantive change in the law. "In enacting this act, the Legislature intends to recodify the laws relating to grand juries for the purpose of collecting such laws under one title of the Penal Code and of providing a more logical arrangement of such laws. *It is not the intent of the Legislature to make any substantive change in the laws affected by this act.* The sections of law added or amended by this act insofar as they are substantially the same as existing statutory provisions relating to the same subject matter shall be construed as restatements and continuations and not as new enactments." (Stats. 1959, ch. 501, § 20, p. 2458, italics added.)

It seems apparent the Legislature intended to leave the pre-1959 practice intact and, therefore, that section 939.2 encompasses the authority formerly contained in sections 1326 and 1327 allowing subpoenas duces tecum in grand jury proceedings.

Hence, we conclude California grand juries do indeed have the power, stemming from both common law tradition and statutory enactment, to issue subpoenas duces tecum.

2. *Grand jury's subpoenas duces tecum do not require good cause affidavits.*

Petitioners' alternative contention is that even if the grand jury had the power to issue a subpoena duces tecum, the ones issued in this case were defective because they lacked the good cause affidavits required by Code of Civil Procedure section 1985.

---

[8]Section 1326 now provides: "The process by which the attendance of a witness before a court or magistrate is required is a subpoena. It may be signed and issued by any of the following: [¶] (1) A magistrate before whom a complaint is laid or his clerk, the district attorney or his investigator, or the public defender or his investigator, for witnesses in the state. [¶] (2) The district attorney, his investigator, or, upon request of the grand jury, any judge of the superior court, for witnesses in the state, in support of an indictment or information, to appear before the court in which it is to be tried. [¶] (3) The district attorney or his investigator, the public defender or his investigator, the clerk of the court in which a criminal action is to be tried, or, if there is no clerk, the judge of the court. The clerk or judge shall, at any time, upon application of the defendant, and without charge, issue as many blank subpoenas, subscribed by him, for witnesses in the state, as the defendant may require. [¶] (4) The attorney of record for the defendant."

a. *Standing issue not reached because writ petition will be denied on the merits.*

Initially, we must address the People's contention that petitioners lack standing to make a facial attack on the grand jury subpoenas. We are not persuaded by the People's argument and, in any event, we need not reach a definitive conclusion because we will hold that petitioners' facial attack is meritless.

At the hearing on the motion to quash, the trial court said: "Procedurally whether the petitioners have standing to attack procedural defects . . . in the subpoenas, the law is not as clear to me in that regard. But my inclination is to rule that they do have standing." Petitioners assert "[t]he law is clear that a subpoena may be quashed when it is defective, will breach established privileges, or violates constitutionally protected interests."

The People argue petitioners lack standing because they do not have any proprietary interest in the subpoenaed documents: "[T]he records are not the Petitioners' property. They are the property of the Roman Catholic Archbishop of Los Angeles, a corporation sole, and they have been turned over to the court in obedience to the grand jury subpoenas without any legal objections or motions to quash those subpoenas being made by the owner or custodian of those records." While conceding petitioners do have legitimate privilege claims to assert, the People contend petitioners have no right to quashal on the procedural ground that the subpoenas lacked good cause affidavits.

■ "[T]he custodian of materials protected by an evidentiary privilege owes a duty to the holder of the privilege to claim the privilege and to take actions necessary to ensure that the materials are not disclosed improperly. [Citations.]" (*People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 713 [107 Cal.Rptr.2d 323, 23 P.3d 563].) Third party intervention for the purpose of filing a motion to quash is generally permitted so that evidentiary privileges are not sacrificed just because the subpoena recipient lacks sufficient self-interest to object.

"[T]he Supreme Court and other federal courts have permitted third parties to move to quash grand jury subpoenas directed to another person where a litigant has sufficiently important, legally-cognizable interests in the materials or testimony sought to give the litigant standing to challenge the validity of that subpoena. See, e.g., *Gravel v. United States*, 408 U.S. 606, [92 S.Ct. 2614, 33 L.Ed.2d 583] (1972) (U.S. Senator asserting constitutional privilege allowed to intervene and move to quash subpoena directed at

his assistant)." (*U.S. v. Johnson* (2000) 53 M.J. 459, 461; see *In re Grand Jury Proceedings in Matter of Freeman* (11th Cir. 1983) 708 F.2d 1571, 1574-1575 [grand jury targets may intervene to assert attorney-client privilege as to subpoenaed witnesses by way of motion to quash].)

Although we have found no California case expressly holding a third party intervener has standing to make a mixed procedural/substantive attack on a subpoena duces tecum, the ability to do so seems to be implied by cases dealing with the analogous situation of suppression motions directed at the fruits of subpoenas duces tecum. (See *Carlson v. Superior Court* (1976) 58 Cal.App.3d 13, 20-23 [129 Cal.Rptr. 650] [where subpoena issued under § 1326 was procedurally defective because requested bank records given directly to prosecutor instead of to trial court, defendants' motion to suppress those records should have been granted]; cf. *People v. Warburton* (1970) 7 Cal.App.3d 815, 822-825 [86 Cal.Rptr. 894] [defendant who was not asserting any proprietary or privilege claim as to business records subpoenaed by Commissioner of Corporations could not mount Fourth Amendment attack on procedural irregularities in subpoena procedure].)

In any event, because we will reject petitioners' claim the subpoenas were facially defective, we need not reach a definitive conclusion on the standing issue.

### b. *Subpoenas not invalid for lack of affidavits.*

Petitioners contend the grand jury subpoenas served on the Los Angeles Archdiocese were invalid because they lacked the good cause affidavits required by Code of Civil Procedure sections 1985, subdivision (b) (affidavit shall be served with subpoena duces tecum, showing good cause and materiality) and 1987.5 (service of subpoena duces tecum is invalid without affidavit).[9]

Petitioners argue these statutes apply to grand jury proceedings by virtue of section 1102, which provides: "The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this

---

[9]Code of Civil Procedure section 1985, subdivision (b), provides: "A copy of an affidavit shall be served with a subpoena duces tecum issued before trial, showing good cause for the production of the matters and things described in the subpoena, specifying the exact matters or things desired to be produced, setting forth in full detail the materiality thereof to the issues involved in the case, and stating that the witness has the desired matters or things in his or her possession or under his or her control."

Code of Civil Procedure section 1987.5 provides, in pertinent part: "The service of a subpoena duces tecum is invalid unless at the time of such service a copy of the affidavit upon which the subpoena is based is served on the person served with the subpoena."

Code." Citing cases that applied this affidavit requirement to criminal trial subpoenas, and assuming that if it applies to criminal trials it must also apply to grand jury proceedings, petitioners conclude the subpoenas in this case were defective because they lacked good cause affidavits. We conclude, however, that this affidavit requirement does not apply to either criminal trials or criminal grand jury proceedings.

*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], expressly held, in the context of a criminal trial, that Code of Civil Procedure section 1985 was irrelevant: "Petitioner initially urges that the affidavits in support of the subpoena duces tecum are insufficient to justify discovery because they fail to demonstrate 'good cause' with adequate specificity as required by Code of Civil Procedure sections 1985 and 2036.[10] The contention is premised on the erroneous assumption that the statutory provisions governing discovery in civil actions apply to criminal proceedings." (*Pitchess v. Superior Court, supra,* at p. 535, fn. omitted.) With one exception, the cases petitioners cite that applied the affidavit requirement to criminal trials all predate *Pitchess.* (See *People v. Brinson* (1961) 191 Cal.App.2d 253 [12 Cal.Rptr. 625]; *People v. Schmitt* (1957) 155 Cal.App.2d 87 [317 P.2d 673]; *People v. Clinesmith* (1959) 175 Cal.App.2d Supp. 911 [346 P.2d 923].) The exception, *People v. York* (1980) 108 Cal.App.3d 779 [166 Cal.Rptr. 717], merely assumed in dictum that it applied. (*Id.* at pp. 789-792.)

Petitioners, however, fail to cite *Fabricant v. Superior Court* (1980) 104 Cal.App.3d 905, 915 [163 Cal.Rptr. 894], wherein this court relied on *Pitchess* in the course of holding that certain Code of Civil Procedure sections permitting attorney fees in connection with a subpoena quashal did not apply to criminal cases, pointing out: "It must also be borne in mind that at the time of the enactment of Code of Civil Procedure sections 1987.1 and 1987.2, our Supreme Court had decided *Pitchess* . . . , holding civil discovery procedures inapplicable in criminal cases and specifically rejecting the affidavit requirement of . . . section 1985." (*Fabricant v. Superior Court, supra,* at p. 915.)

Equally important, we conclude no affidavit should be required because the very purpose of a grand jury investigation would be vitiated if a subpoena duces tecum had to be justified by a threshold good cause showing. " '[The grand jury] is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited

---

[10]When *Pitchess* was decided, Code of Civil Procedure section 1985 was substantially the same as it is now and Code of Civil Procedure section 2036, subdivision (a), provided: " 'A party required to show "good cause" to obtain discovery under any provisions of Chapter 2 (commencing with Section 1985) . . . shall show specific facts justifying discovery and mere proof of the relevance of the information sought to the subject matter of the action shall not be sufficient.' " (*Pitchess v. Superior Court, supra,* 11 Cal.3d at p. 535, fn. 1.)

narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning. [Citation.]' [Citation.]" (*United States v. Dionisio* (1973) 410 U.S. 1, 13, fn. 12 [93 S.Ct. 764, 771, 35 L.Ed.2d 67].)

In *United States v. R. Enterprises, Inc.* (1991) 498 U.S. 292 [111 S.Ct. 722, 112 L.Ed.2d 795], the Supreme Court rejected a lower court decision requiring the government to make an initial showing of relevancy, admissibility and specificity in order to enforce grand jury subpoenas for business records.

"A grand jury subpoena is . . . much different from a subpoena issued in the context of a prospective criminal trial, where a specific offense has been identified and a particular defendant charged. . . . [T]he Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause *because the very purpose of requesting the information is to ascertain whether probable cause exists.* [Citation.] This Court has emphasized on numerous occasions that many of the rules and restrictions that apply at a trial do not apply in grand jury proceedings. This is especially true of evidentiary restrictions." (*United States v. R. Enterprises, Inc., supra,* 498 U.S. at pp. 297-298 [111 S.Ct. at p. 726], italics added.) "The teaching of the Court's decisions is clear: A grand jury 'may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials,' [citation]." (*Id.* at p. 298 [111 S.Ct. at p. 726].) "*[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority. [Citations.] Consequently, a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance.* Indeed, this result is indicated by the language of Rule 17(c),[11] which permits a subpoena to be quashed only 'on motion' and '*if compliance* would be unreasonable' (emphasis added). *To the extent that the*

---

[11]Federal Rules of Criminal Procedure, rule 17(c) (18 U.S.C.), entitled "Producing Documents and Objects," provides: "(1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them. [¶] (2) *Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.*" (Italics added.)

*Court of Appeals placed an initial burden on the Government, it committed error. . . ."* (*Id.* at pp. 300-301 [111 S.Ct. at p. 728], italics added.)

We heartily concur in the logic of *United States v. R. Enterprises, Inc., supra,* 498 U.S. 292, and therefore conclude that the subpoenas duces tecum were not facially defective for lack of good cause affidavits.

3. *Untimely raised claims are without merit.*

Finally, we address two other points petitioners have raised in their response to the People's return to the writ petition. It is asserted the subpoena relating to petitioner M.B. should be quashed for the additional reason that he has now been charged by criminal complaint with 26 counts of child molesting. It is also asserted the subpoena relating to petitioner D.G. should be quashed for the additional reason that the People concede the statute of limitations has expired as to him.

However, given the wide breadth of legitimate grand jury investigative aims, we are not persuaded that these unelaborated assertions alone are sufficient to warrant quashing the subpoenas. ■ A presumption of regularity is afforded to grand jury proceedings, a presumption that "attaches even after the grand jury has returned an initial indictment. After all, superseding indictments setting forth new charges or adding new defendants are familiar fare. [Citations.]" (*U.S. v. Flemmi* (1st Cir. 2001) 245 F.3d 24, 28.) The grand jury may be properly interested in other aspects of a person's conduct than those necessarily leading to criminal charges against that person.

## DISPOSITION

The petition for writ of mandate is denied; our previous stay order in this matter is vacated.

Croskey, J., and Kitching, J., concurred.