[No. B221140. Second Dist., Div. Eight. Aug. 30, 2010.]

In re R.R., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
ROBERT B., Defendant and Appellant.

**COUNSEL**

Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant.

Andrea Sheridan Ordin, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

Opinion

**RUBIN, J.**—This case presents the question of whether a parent in a dependency proceeding who claims he is not abusing drugs thus tenders his past drug use in issue and, as a result, forfeits his physician-patient privilege regarding that drug use. We conclude that under the circumstances of this case the answer is, "Yes," and hold that the juvenile court properly admitted father's medical records at the jurisdiction and disposition hearing. For this and other reasons, we affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Appellant's Contentions*

Appellant Robert B. (father) appeals from the December 4, 2009 order declaring his daughter, R.R., a person described by Welfare and Institutions Code section 300, subdivision (b) based on father's past and current drug use.[1] He contends (1) the trial court erred in denying his motion to quash a subpoena duces tecum which did not comply with the notice requirements of Code of Civil Procedure section 1985.3; (2) it was error to admit into evidence his medical records obtained pursuant to that subpoena; (3) insufficient evidence supported the finding that father's drug use placed R.R. at risk of physical and emotional harm; and (4) it was an abuse of discretion to limit father's contact with R.R.

### B.  *Detention*

R.R. was born in December 2001. She first came to the attention of the Department of Children and Family Services (DCFS) in the spring of 2009. At the time, R.R. was living with her mother and half siblings in Arizona, in the home of mother's male companion, Mark X. The home had no electricity, gas or hot water. A maternal aunt went to Arizona to visit mother; mother's appearance and the presence of drug paraphernalia led maternal aunt to suspect mother was using drugs. Maternal aunt returned with mother and R.R. to California, and for a while mother, R.R. and a half sister resided with maternal aunt. About a month later, mother alone returned to Arizona. When mother did not return on the date promised, maternal aunt contacted DCFS.

On June 18, 2009, mother called DCFS from Arizona. In the conversation, mother admitted using methamphetamines but denied she was addicted to

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

drugs. Mother said she would return to California by June 26, but she did not do so. R.R. and her half sister Amber were detained on June 30, 2009, and placed with a family friend.[2] According to the detention report, father's whereabouts were unknown.

DCFS filed a section 300 petition on July 6, 2009, as to Amber and R.R. The only allegations relating to appellant father were paragraphs b-7 and g-3, which alleged that he failed to provide R.R. with the necessities of life (§ 300, subds. (b), (g)).[3] At the July 6, 2009 detention hearing, father was found to be an alleged father whose whereabouts were unknown.

In its jurisdiction/disposition report prepared for hearings later that month, DCFS reported father still had not been located but a due diligence search was in progress. The adjudication hearing was continued to September 2009.

C. *Father's Appearance in the Matter: Alleged Drug Use*

Father's first appearance was on August 18, 2009, at which time he was appointed counsel. Father filed a statement regarding parentage requesting a determination that he was R.R.'s father, his parentage had been established by a DNA test, and he was current on his child support payments. According to a DCFS report filed September 10, 2009, father had three felony convictions that had resulted in prison terms. The most recent incarceration was a 16-month sentence for possession of a firearm in 2005. Father was separated from his wife and living with his mother; his two children from his estranged wife were living with her. Father wanted custody of R.R. DCFS recommended that father receive family reunification services and monitored visits with R.R.

Father appeared with counsel at the September 10, 2009 adjudication hearing and asked DCFS to provide a supplemental report on his paternity,

---

[2] Later, both girls were returned to maternal aunt.

[3] Although only R.R.'s father is the appellant in these proceedings, for completeness we observe the petition also alleged that R.R.'s mother and her male companion, Mark X., had a history of violent altercations in the presence of R.R. and her half siblings, and that mother failed to protect the children from these altercations (§ 300, subds. (a), (b)); mother left the children in the care of a maternal aunt and uncle without making provisions for their ongoing care, and mother failed to provide the children with the necessities of life (*id.*, subds. (b), (g)); mother had a history of substance abuse and currently was using methamphetamine, which rendered her incapable of caring for the children (*id.*, subd. (b)); mother and Mark X. physically abused Amber (*id.*, subds. (b), (j)); mother allowed unrelated adults to use illicit drugs in the home, thus creating a detrimental home environment for the children (*id.*, subd. (b)); and Amber's father, Jesse D., failed to provide for her (*id.*, subds. (b), (g)). On July 10, 2009, a section 300 petition was filed as to other half siblings.

Neither Amber nor the other children are parties to this appeal.

compliance with child support orders, and negative drug tests. His counsel asked the court to expedite the processing of the lab report. "Obviously, if it's favorable to our client, if it's a clean test, we need it for preparation for our trial." Counsel also stated there was no reason to deny father visitation rights in the absence of a drug test that showed a substance abuse problem. Father also indicated his intention to challenge the finding that he was an alleged, not a presumed, father and to seek custody of R.R.

Minor's counsel requested that the social worker reinterview mother about her recent interactions with father because "there's been some information brought forward that I think needs to be investigated before any custody or placement decisions are made about [R.R.]" The juvenile court continued the adjudication hearing to October 2, 2009, and ordered DCFS to prepare a supplemental report addressing, among other things, father's drug test results. Father was given monitored visits.

In an interview on September 16, 2009, father told the social worker that mother introduced him to methamphetamines years ago, but he had been drug free for six years. Father agreed to test "everyday to prove I have not been using drugs." DCFS recounted the interview in its report prepared for the October 2 hearing. Attached to the DCFS report was a toxicology report that showed on August 20, 2009, father had tested negatively for methamphetamine, cocaine, marijuana and other substances. Mother, however, had told the social worker that father had used methamphetamines with mother just two weeks before mother had entered into a drug program on July 21, 2009. Another report showed he was current on child support payments.

D. *"New Information" Concerning Father and the Subpoena Duces Tecum*

At the October 2, 2009 hearing, the children's counsel requested a continuance for DCFS to investigate undescribed "new information" about father that counsel had learned that day. Father objected to a continuance, arguing that the new information was "hearsay" and that father was ready to move forward with the adjudication. Mother and DCFS joined in the request for further investigation and a continuance. DCFS explained, "The information that's going to be investigated is going to be investigated via subpoena and so, if there is actual evidence, it will result from the subpoena and, of course, I would distribute to all parties." DCFS counsel said she intended to request a subpoena duces tecum to be returned to the court by October 19; she would provide the results (i.e., distribute the documents produced) to all counsel. Although father's hearsay objection suggested that father knew what

"new information" had been brought to the investigator's attention, none of the attorneys described it for the record, and father did not ask DCFS to identify the entity that was to be subpoenaed.[4] Father objected to a continuance, but he did not object to the proposed procedure—the use of a subpoena duces tecum—to provide the court with additional material. The juvenile court continued the hearing to November 2, 2009, and ordered DCFS to file a supplemental report addressing, among other things, father's drug test results. In the interim, father was given unmonitored visits.

On October 13, 2009, the court clerk issued a subpoena directing the LAC+USC Medical Center to produce the following documents relating to father at the courthouse on October 19, 2009: "Certified copies of any and all records including but not limited to all charts, intake and discharge summaries, nursing notes, doctor's notes, lab test results and diagnostic scan results." The subpoena specified documents from "6/1/09–present." Consistent with Code of Civil Procedure section 1985 (section 1985), the subpoena directed the witness to place the records in a sealed envelope, enclose a declaration with the records, attach a copy of the subpoena to the envelope, place the envelope in a larger outer envelope, mail the outer envelope to the clerk of the court, and mail a copy of the declaration to the attorney shown at the top of the form (DCFS counsel). A cover letter reiterated these directions and a sample declaration was provided.

At the adjudication hearing on November 2, 2009, the documents obtained by subpoena duces tecum were distributed to all counsel.[5] According to a last minute information for the court filed for the hearing, father was having successful unmonitored visits with R.R. But, "[d]uring a medical visit in 2009 [father] admitted to medical staff that he used methamphetamines, cocaine, marijuana and consumes 5 beers per day. Based on this information, [DCFS] is respectfully recommending that [father] no longer have unmonitored visits with [R.R.]." (Capitalization omitted.) At the hearing, father's counsel asked for a continuance, explaining that she "received a packet of information today

---

[4] At oral argument on appeal, counsel for father conceded that father was aware at the time that DCFS was intending to subpoena hospital records. On April 15, 2010, we granted DCFS's unopposed motion to augment the record with a declaration from Deputy County Counsel Angela Williams who represented DCFS in the juvenile court. The augmented record shows that in an off-the-record proceeding before the juvenile court, DCFS stated it intended to subpoena medical records from LAC+USC Medical Center that might show father's recent methamphetamine use. The augmented record also showed that on October 19, 2009, County Counsel Williams received from the clerk the documents subpoenaed from LAC+USC Medical Center and thereafter, on some unstated date, distributed the documents to all counsel.

[5] Copies of the records obtained by the subpoena duces tecum are in the clerk's transcript as an attachment to the supplemental report prepared for the December 4, 2009 adjudication hearing.

that I need time to review and go over with my client."[6] Counsel for DCFS requested that father's visitation be changed to monitored based on the allegation that he was currently using methamphetamines. Over father's objection, the juvenile court ordered monitored visits and continued the matter to December 4, 2009.

### E. The Amended Section 300 Petition

On November 16, 2009, DCFS filed an amended section 300 petition which, as it related to father, deleted paragraphs b-7 and g-3 that had alleged father had not provided R.R. with the necessities of life, and added paragraph b-8 that alleged father "admitted to medical staff at USC Medical Center on 7/18/2009, 7/20/2009 and 8/11/2009 that he last used methamphetamines on 7/17/2009 and that he has an eight year history of using methamphetamines. Father further admitted that he has used marijuana[;] has a twenty year history of consuming beer; that he drinks three beers a day for a total of twelve beers a week. Father further admitted that he has used cocaine. Father's drug use renders father incapable of providing regular care and supervision of the child. Further father's drug use endangers the child's physical and emotional health, safety, and well being, and places the child at risk of physical and emotional harm, and damage." The juvenile court granted father's request to put over his arraignment on the amended petition to the previously scheduled December 4, 2009 hearing.

### F. The Motion to Quash the Subpoena Duces Tecum

On Wednesday, November 25, 2009, three weeks *after* the subpoenaed documents had been distributed to counsel, and the day before Thanksgiving, father filed a motion to quash subpoena duces tecum, to be heard on Friday, December 4, 2009. The motion sought to exclude from evidence father's medical records and any reference to those records. Father asserted that the subpoena duces tecum did not comply with Code of Civil Procedure section 1985.3 and Evidence Code section 1560, which father maintained are applicable to dependency proceedings by virtue of Welfare and Institutions Code section 341.[7] Father's counsel personally served the motion on all counsel on Monday, November 30, 2009.

---

[6] We note that father did not then object that the section 1985 et seq. procedures for disseminating documents obtained by subpoena duces tecum had not been followed.

[7] Section 341, which governs subpoenas in dependency proceedings, provides in part: "Upon request . . . the clerk of the court, or an attorney, pursuant to Section 1985 of the Code of Civil Procedure [(process for obtaining a subpoena)], shall issue subpoenas requiring attendance and testimony of witnesses and production of papers at any hearing regarding a child who is alleged or determined by the court to be a person described by Section 300. . . ."

Evidence Code section 1560 sets forth the requirements for compliance with a subpoena duces tecum by a nonparty.

In relevant part, Code of Civil Procedure section 1985.3 requires a party utilizing a subpoena duces tecum to obtain a consumer's hospital records to give notice to the consumer

At the December 4 hearing, the juvenile court stated that it had not received a copy of father's motion to quash, even though it was file stamped November 25. DCFS acknowledged it had received copies of the motion on November 30, but asserted notice was not timely.[8] DCFS argued that father first knew about the subpoena on October 2, 2009, and had actually received the documents on November 2, 2009, but waited until November 25, 2009, to object on any grounds, including privilege. DCFS offered to redact everything from the documents except the references to father's admission of drug use. Father's counsel countered that she timely filed the motion 10 calendar days before the hearing. She explained that she did not file the motion immediately upon receiving the subpoenaed documents on November 2, 2009, because she did not know that DCFS would not seek father's "consent."[9] The juvenile court observed that, because the motion was filed the day before Thanksgiving, there was not "a lot of notice to anybody."[10] The juvenile court concluded that it could not reach the merits of the motion to quash because it did not comply with unspecified Superior Court of Los Angeles County Local Rules and denied the motion to quash as untimely. It also denied father's request for a continuance to allow the motion to be heard at a future time on the merits.

## G.  *The Adjudication Hearing*

After the juvenile court's denial of the motion to quash, the court proceeded with the adjudication hearing. According to the supplemental report

---

(or, if the consumer is a party, to his or her attorney) that the consumer's hospital records are being sought. (§ 1985.3, subd. (b)(1), (2).) The notice must be served 10 days prior to the production date called for in the subpoena. Prior to the production of records, the subpoenaing party must furnish the witness with written authorization to release the records, signed by the party whose records are being sought or that party's attorney. (*Id.*, subd. (c)(2).) A party whose records are being sought may bring a motion to quash the subpoena duces tecum before the date of production. (*Id.*, subd. (g).) If the witness refuses to produce the documents, the subpoenaing party may bring a motion to enforce the subpoena within 20 days of service of written objections to the subpoena. (*Ibid.*)

[8] Counsel for the minors objected that there was not the requisite "15 day notice." This appears to be a slightly incorrect reference to Code of Civil Procedure section 1005, subdivision (b), which provides: "Unless otherwise ordered or specifically provided by law, all moving and supporting papers shall be served and filed at least *16 court days* before the hearing." (Italics added.)

[9] Counsel's use of the word "consent" was an apparent reference to Code of Civil Procedure section 1985.3, subdivision (c)(2), which provides that the subpoenaed documents shall be produced if the subpoenaing party provides "written authorization" from the consumer or his or her attorney.

[10] The court may have had in mind Superior Court of Los Angeles County, Local Rules, rule 7.12(b)(3) which reads, "Papers should not be served . . . in a manner designed to inconvenience an adversary, such as late on Friday afternoon or the day preceding a secular or religious holiday."

filed for that hearing: father had not contacted DCFS regarding random drug testing; in connection with a July 2009 hospitalization, he admitted using methamphetamines and marijuana; since the last hearing, father told the social worker that he would no longer be visiting R.R. because he was only available on Sundays and maternal aunt was not available to monitor on Sundays; when the social worker told father that paternal grandmother could monitor the visits, father said he had to check with his attorney. The report recommended the petition be sustained, and that father receive family reunification services and monitored visits, be subject to random drug testing, and participate in a parenting program.

In its case-in-chief, DCFS introduced the November 2, and December 4, 2009 reports, each of which recounted information obtained from the subpoenaed medical records. Father objected that these two documents were inadmissible because (1) DCFS did not comply with Code of Civil Procedure section 1985.3; (2) the documents were unlawfully obtained;[11] (3) they constituted inadmissible hearsay; (4) they were protected by the doctor-patient privilege; and (5) absent allegations that father neglected or abused R.R., father's drug use was not relevant.

DCFS, the minor and mother countered that the reports were admissible for the following reasons: (1) Code of Civil Procedure section 1985.3 is inapplicable to the "informal discovery" process in dependency proceedings; (2) Welfare and Institutions Code section 341 does not expressly make Code of Civil Procedure section 1985.3 (consumer notice) applicable to dependency proceedings; (3) the timeframe for notice to the consumer and right to object in section 1985.3 is inconsistent with the requirement that dependency cases be adjudicated within 60 days; (4) section 1985.3 does not apply to DCFS; and (5) father waived the doctor-patient privilege by not objecting until after the documents were disclosed.

---

[11] Father argued that the documents were unlawfully obtained because the source that alerted DCFS to the hospital records was a family member who worked at the hospital and thus breached the hospital's duty of confidentiality by telling DCFS about the documents. County counsel reported to the juvenile court that a family member had advised DCFS of the father's hospital admission, but that counsel had "no information that the person who revealed this information worked at the hospital." Mother's counsel clarified that mother previously told DCFS that she used drugs with father but it was not until October 2, 2009, that mother told DCFS father became ill after they used drugs together and he was taken by ambulance to the hospital. "He did have this emergency visit to the hospital, and that's what led [DCFS] to look at these records to see if his statement that he wasn't using drugs with the mother was valid or not." Minor's counsel noted that father's hospitalization on July 19 was consistent with mother's allegation that she was using methamphetamine with father before she entered a drug program on July 21. Although father makes a passing factual reference in his brief to a relative working at the hospital, he does not cite any authority that this claim has any legal significance. We treat the point as waived. (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1215 [4 Cal.Rptr.3d 519] ["Contentions are waived when a party fails to support them with reasoned argument and citations to authority."].)

The juvenile court concluded: "I think that the failure of the father to object timely to this subpoena duces tecum for—[DCFS] indicated in October they intended to do this. It was then included in a report, so there was two separate dates at which the father could have objected and we could have had a proper hearing as to whether or not the department violated the procedural requirement of [Code of Civil Procedure] section 1985.3. [¶] But, given that the Legislature has prescribed that the dependency cases do have a strict time schedule, the court will find that the father's motion and his objections are not timely in this case." Although it overruled father's evidentiary and section 1985.3 objections, the juvenile court allowed father to argue whether the information was relevant to establish a risk to the child. It concluded that the challenged reports were relevant to assessing R.R.'s safety.

The juvenile court sustained paragraph b-8 of the petition, the sole count relating to father. It found, by a preponderance of the evidence, that father's "history and fairly recent drug use present a risk to the child because he is indicating now he would like to have a relationship with the child."

Father filed a timely notice of appeal.

## DISCUSSION

### A. *The Juvenile Court Did Not Err in Denying the Motion to Quash*

Father contends the juvenile court erred in denying his motion to quash. His opening brief lists seven different grounds for quashing the subpoena. For ease of organization, we discuss his procedural arguments separately from his substantive arguments. Ultimately, we find no error in the trial court's admission of evidence of father's hospitalization.

#### 1. *Timeliness*

Father contends the motion to quash was timely under the Superior Court of Los Angeles County Local Rules. We disagree.

The requirements of the Code of Civil Procedure do not generally apply to juvenile dependency proceedings, which are special proceedings governed by their own rules and statutes (*In re Josiah Z.* (2005) 36 Cal.4th 664, 679 [31 Cal.Rptr.3d 472, 115 P.3d 1133]). Nevertheless, in the absence of a dispositive provision in the Welfare and Institutions Code and the Juvenile Rules (Cal. Rules of Court, rule 5.500 et seq.), we look to the Code of Civil Procedure for guidance. (*Josiah Z., supra,* at p. 679.)

The general rule is that all moving papers in civil actions must be served and filed 16 court days before the hearing, plus an additional five

calendar days for service by mail (Code Civ. Proc., § 1005, subds. (a)(13), (b), (c); Cal. Rules of Court, rule 3.1300(a).) But no appellate court has applied the 16-day rule universally to dependency proceedings, presumably because rigid application would in many cases be at odds with the dependency statutory scheme which is "geared toward expediency, largely to serve the dependent child's best interests." (*In re Claudia E.* (2008) 163 Cal.App.4th 627, 635 [77 Cal.Rptr.3d 722].)

■ In the absence of legislative directive to the contrary, courts may adopt local rules with the force of law, including reasonable rules on the time to file pleadings. (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 29 [210 Cal.Rptr. 762, 694 P.2d 1134].) In Los Angeles County, dependency proceedings are governed by chapter 17 of the local rules of the superior court. Rule 17.15(b) of the Superior Court of Los Angeles County Local Rules provides: "Moving party shall serve the notice of motion, a copy of the motion and all supporting documents upon all other counsel in the case at least 5 calendar days but not less than 3 court days before the date of the hearing if personally served or served by facsimile, or 7 days before the hearing if served by mail."
■ We understand the reference to "7 days" to mean seven calendar days. (*Iverson v. Superior Court* (1985) 167 Cal.App.3d 544, 548 [213 Cal.Rptr. 399] [in the absence of language specifying "court days," a reference to days means "calendar days"].) Thus, in dependency proceedings, motions must be personally served at least three court days and five calendar days before the hearing, or served by mail at least seven calendar days before the hearing. Because there is no contrary statute, rule or local rule, the general rule that a motion is "deemed to have been made . . . upon the due service and filing of the notice of motion" (Code Civ. Proc., § 1005.5) applies equally in dependency proceedings.

Here, father's motion to quash was filed Wednesday, November 25, 2009, the day before Thanksgiving. The parties augmented the record with a settled statement establishing that father caused the motion to be personally served on all counsel on the following Monday, November 30, 2009. Although this was more than three court days, it was not "at least five calendar days" before the December 4, 2009 hearing, as required by the Superior Court of Los Angeles County, Local Rules, rule 17.15(b). Accordingly, the trial court correctly found that the motion was untimely.

We are not persuaded by father's argument that the juvenile court abused its discretion by refusing to continue the hearing so that the motion would have been timely. At the hearing, father made no showing as to why the motion could not have been served either by mail on the day it was filed, November 25, which would have made it timely under the Superior Court of Los Angeles County, Local Rules, rule 17.15(b), or personally five days

before the hearing. Considering that father's counsel had received the underlying documents a month earlier, and the general subject matter of the motion appears to have been well known for two months, the trial court was well within its discretion in deciding that further delays were not justified and not in the child's best interests. (*In re Julian R.* (2009) 47 Cal.4th 487, 498–499 [97 Cal.Rptr.3d 790, 213 P.3d 125] [juvenile court order presumed correct; appellant has burden to demonstrate error].)

### 2. *Code of Civil Procedure Section 1985.3*

Father contends the motion to quash should have been granted because DCFS failed to comply with the notice requirements set forth in Code of Civil Procedure section 1985.3. Even assuming a timely motion, we would not reverse the order of the juvenile court on that ground, as any error in not granting the motion to quash under section 1985.3 was undoubtedly harmless. If the juvenile court had granted the motion to quash for noncompliance with section 1985.3, the ruling only would have prompted DCFS to serve a new subpoena duces tecum on the hospital with proper section 1985.3 notice; if father then filed a new motion to quash the second subpoena, for the reasons explained in parts B.1. and B.2., *post*, the trial court would have been obliged to deny the motion to quash and to order the documents produced. Hence, any error in not quashing the subpoena under section 1985.3 would have been harmless.[12]

### B. *Any Error in Not Hearing the Motion to Quash Was Harmless Because as a Matter of Substantive Law the Motion Would Have Been Denied; Father's Hospital Records Were Admissible*

A motion to quash provides the trial court with the opportunity to determine whether documents should be produced pursuant to the underlying subpoena. If the motion to quash is granted, then the documents remain in the custody of the person subpoenaed and are not used in the litigation. The

---

[12] We expressly do not decide the question of whether Code of Civil Procedure section 1985.3 applies in juvenile dependency proceedings. The parties have devoted significant time and effort to advancing their respective arguments as to why section 1985.3 does or does not apply in this setting. It may be that, considering the conflicting policy considerations including the need to handle dependency matters with "expediency" (*In re Claudia E., supra*, 163 Cal.App.4th at p. 635), those efforts should be directed to the Legislature or the Judicial Council's rule making authority (Cal. Const., art. VI, § 6, subd. (d)). (See generally Cal. Rules of Court, rule 5.546 [informal discovery rules in dependency proceedings].) The need for guidance in this area is demonstrated by the fact that father's presumptively privileged medical records were turned over to county counsel unilaterally by the clerk of the court and opened by county counsel sometime around October 19, 2009, without giving father advance notice. Although ultimately concluding any error was harmless, we are nevertheless troubled by the procedure employed in this case.

process is particularly important when dealing with presumptively privileged documents—such as the hospital records here. (See Evid. Code, § 994 [physician-patient privilege].) Often the subpoena recipient does not have sufficient self-interest to object to production so the motion to quash allows a party to bring the privilege or other evidentiary objection to the attention of the court. (*M. B. v. Superior Court* (2002) 103 Cal.App.4th 1384, 1392 [127 Cal.Rptr.2d 454].) A motion to quash is typically filed before the time for production (see, e.g., Code Civ. Proc., § 1985.3, subd. (g)), but the court has authority to consider the motion even if brought after the date for production. (*Slagle v. Superior Court* (1989) 211 Cal.App.3d 1309, 1312–1313 [260 Cal.Rptr. 122].)

In the present case, if the juvenile court had heard the motion to quash, it would have been called upon to make the same rulings on the substantive evidentiary objections that father ultimately made at the December 4 adjudication hearing: the medical records were protected by the physician-patient privilege and they were hearsay. At the hearing, the juvenile court overruled those objections and admitted the medical records. Because we conclude those rulings were correct, it stands to reason the juvenile court would have made the same rulings in the context of a fully adjudicated motion to quash. Any failure to hear the motion to quash was, thus, harmless and does not justify reversal of the juvenile court's orders. (Code Civ. Proc., § 475.)

### 1.  *Physician-patient Privilege*

■  Evidence Code section 994 makes privileged a confidential communication between a doctor and a patient. DCFS does not contest that the hospital records are presumptively privileged. It asserts for various reasons that father has forfeited and waived his right to object to the introduction of the medical records. We conclude that because father tendered his medical condition as it related to the use of controlled substances, the hospital records are not privileged.

■  Section 996 of the Evidence Code provides there is no privilege "as to a communication relevant to an issue concerning the condition of the patient if such issue has been tendered by: [¶] . . . The patient . . . ." The patient-litigant exception, as the statute is known, is justified for two different reasons. First, since the patient has put into issue the medical condition, he "may no longer justifiably seek protection from the humiliation of its exposure." (*Manela v. Superior Court* (2009) 177 Cal.App.4th 1139, 1148–1149 [99 Cal.Rptr.3d 736].) Second, in all fairness, a patient ought not to be allowed to establish a condition without a full inquiry into the circumstances. (*Ibid.*)

Father's first appearance in this case was on August 18, 2009. At the time, the only allegation against father, whose whereabouts had been previously unknown, was that he had failed to provide the necessities of life. Three weeks later, on September 10, 2009, he appeared in court with counsel and asked DCFS to provide a report on negative drug tests. Counsel asked the court to expedite the process because if the tests were favorable, the results would assist in father's preparation for trial. Father also argued that the absence of positive tests supported an immediate resolution of his request for visitation. On September 16, 2009, father told the social worker that mother had introduced him to methamphetamines years ago but he had been clean for six years. He offered to submit to drug tests "everyday to prove I have not been using drugs." Mother told the social worker that father had used drugs as recently as July 2009.

The foregoing shows that, nearly from his first appearance, father was intent on showing the social worker and the juvenile court that he was not using drugs and that his drug-free life warranted unmonitored visitation and ultimately custody of R.R. In the words of Evidence Code section 996, father tendered his drug use, or more aptly his drug-free life, in the juvenile proceedings and therefore was not entitled to assert that recent medical records showing substance abuse were privileged.

Father contends he did not tender his drug use as an issue in the case. Without expressly so stating, he asks us to infer that it was DCFS who tendered the issue. Accordingly, he argues that his case is similar to *Koshman v. Superior Court* (1980) 111 Cal.App.3d 294, 296 [168 Cal.Rptr. 558]. There, a divorced father in a dissolution proceeding claimed his former spouse had been hospitalized for a drug overdose and was not fit to retain custody of the couple's children. The court held that under the circumstances, it was the father not the mother who put the mother's health in issue and the privilege was not lost. (See also *Manela v. Superior Court, supra*, 177 Cal.App.4th at p. 1149.) Leaving aside whether the family law cases have application in juvenile court proceedings, in the present case it was father who put his lack of recent drug use before the court, and he has no privilege to keep hospital records on the subject from being considered by the juvenile court.[13]

### 2. *Hearsay*

Father also contends the trial court erred in not sustaining his hearsay objection to the hospital records. Hospital records and other similar documents are presumptively hearsay because they are out-of-court statements

---

[13] We do not hold that father waived the privilege under Evidence Code section 912 based on a failure to object timely to the subpoena or production of the medical records, only that he may not claim the privilege because he had tendered the issue of drug use.

offered to prove the truth of a fact, here father's recent drug use. Hospital records are often admissible under the business records exception to the hearsay rule, assuming a custodian of records or other duly qualified witness satisfies the requirement of the exception. (Evid. Code, § 1271.) Compliance with a subpoena duces tecum often dispenses with the need for a live witness to establish the business records exception. (Evid. Code, § 1560 et seq.)

Father argues DCFS did not establish that the hospital records fell within the business records exception to the hearsay rule because there was no showing of compliance with Evidence Code sections 1271, 1560, 1561 and 1562. DCFS counters with the general statement about hospital records often qualifying as business records, but does not cite to any part of the appellate record that would establish that the hospital complied with statutory requirements in this case.

We need not determine whether the hospital records qualified as a business record because, even if they were hearsay, they are admissible in the jurisdictional hearing under section 355.

In relevant part, section 355, subdivision (b) provides: "A social study prepared by the petitioning agency [DCFS], and hearsay evidence contained in it, is admissible and constitutes competent evidence upon which a finding of jurisdiction pursuant to Section 300 may be based, to the extent allowed by subdivisions (c) and (d)." Subdivision (c)(1) of section 355 provides, in part: "If any party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient *by itself* to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based, unless the petitioner establishes one or more of the following exceptions: [¶] (A) The hearsay evidence would be admissible in any civil or criminal proceeding under any statutory or decisional exception to the prohibition against hearsay." (Italics added.)

■ Section 355 thus does not bar hearsay evidence at a jurisdictional hearing but, if a timely objection is made and no hearsay exception applies, the evidence must be corroborated. (*In re B.D.* (2007) 156 Cal.App.4th 975, 983–984 [67 Cal.Rptr.3d 810] (*B.D.*).) It was here.

Corroborating evidence is evidence which supports a logical and reasonable inference that the act described in the hearsay statement occurred. (*B.D., supra*, 156 Cal.App.4th at p. 984.) The quantum of corroboration necessary to

support a jurisdictional finding is "somewhat analogous to the rule in criminal law requiring independent corroborative proof of accomplice testimony," that is, direct or circumstantial evidence, even if slight, is sufficient if it tends to connect the accused with the act. (*Ibid.*)

In *B.D.*, the mother objected on hearsay grounds to the statements of various witnesses included in the detention and jurisdictional reports, each of whom said they saw the mother hit the child. The juvenile court sustained the objection and dismissed the petition, finding no independent evidence upon which it could rely to support the petition. The appellate court reversed, finding the mother's statements regarding the incident, including several inconsistent statements, as well as the child's changed attitude toward the mother after the incident, provided sufficient evidence from which it could reasonably be inferred that the act of which the mother was accused occurred. (*B.D., supra*, 156 Cal.App.4th at pp. 985–986.)

Here, mother's statement to the social worker that father had used methamphetamine with mother shortly before she entered a drug program, and that he had become ill and had been taken to the hospital, was sufficient corroboration. Father does not argue the corroboration was insufficient as a matter of law, only that mother was not credible. That, of course, was for the juvenile court to decide.

C. *Father's Right to Privacy*

Father contends his right to privacy was violated by dissemination of his medical records. As we understand his arguments, they are: (1) disclosure of his medical records was not necessary to achieve a compelling interest; and (2) the records "were obtained in an insidious illegal manner" because DCFS was alerted to the records by a relative of father's who worked at the hospital.

We dispense with the first argument in short order: DCFS and the juvenile court had a compelling interest in determining whether father was unable to care for R.R. as a result of his substance abuse. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826] ["Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect."].)

As to the second argument, other than father's counsel's assertion at the hearing (and DCFS's denial) that DCFS learned of the hospital records from a hospital employee who was a family member, father has cited no evidence

that this was the source of DCFS's information. And, even if the unnamed family member was the source of the information, father has cited no authority for the proposition that otherwise relevant and nonprivileged records become inadmissible because of vague claims of invasion of privacy. (*Moulton Niguel Water Dist. v. Colombo, supra*, 111 Cal.App.4th at p. 1215.)

Father's reliance on *Laurie S. v. Superior Court* (1994) 26 Cal.App.4th 195 [31 Cal.Rptr.2d 506] (*Laurie S.*) and *In re Daniel C. H.* (1990) 220 Cal.App.3d 814 [269 Cal.Rptr. 624] (*Daniel C. H.*) is misplaced. In *Laurie S.*, a section 300 petition alleged that the mother could not care for her four-month-old infant due to mental illness; she had been heard yelling obscenities at the child and observed failing to bond with her. The issue on a petition for a writ of mandate was whether the juvenile court could order the mother to submit to a psychological evaluation for discovery purposes, before the child was adjudged a dependent child. The mother argued that in proceedings involving a child not yet declared to be a dependent the department had to prove the petition based on her conduct, not her mental state, and the order violated her privacy rights. (*Laurie S., supra*, at p. 200.) The court concluded that the fact of mental illness alone does not justify a psychological examination. Denying the allegation does not tender the issue of the parent's mental state; only after a finding that the child is at risk (which the court noted could be assessed from the mother's conduct without expert opinion), and assumption of jurisdiction, do the parents' privacy interests yield to the need to protect the child. (*Id.* at p. 202.) The court in *Laurie S.* expressly declined to rule on whether the juvenile court erred in allowing the department to introduce the mother's previous psychological evaluations into the dependency proceedings. (*Id.* at p. 203.) This case is distinguishable from *Laurie S.* because the issue here is the admissibility of medical records tending to prove father's past conduct (using methamphetamines, cocaine, marijuana and alcohol), the very issue upon which the court in *Laurie S.* declined to rule. By way of contrast with the psychological testing presented in *Laurie S.*, we observe that father did not contest the court's ruling on drug testing; on the contrary, he asked the court to expedite the processing of drug testing.

In *Daniel C. H.*, the parents were involved in a bitter divorce. A section 300 petition alleging the father sexually abused his son was sustained. After an unmonitored visit with the father, the child told the child evaluator the father had molested him again. The department filed a section 387 supplemental petition based on the allegation. Afterwards, the child began seeing a new treating therapist. The new therapist wrote to the juvenile court stating that he did not wish to report directly to the court about the child because it would jeopardize his therapeutic relationship with the child. (*Daniel C. H., supra*, 220 Cal.App.3d at p. 823.) At the trial on the supplemental petition, the father's theory was that no molestation occurred, but that the mother coached

the child into making the accusation. The father hoped the child's treating therapist would support this theory, but the child's attorney objected to the therapist testifying on the grounds of psychotherapist-patient privilege. The father countered that the child had tendered his mental condition as an issue. The court concluded that a parent has no fundamental right to demand disclosure of confidential communications made by a minor child to that child's therapist where the therapist has stated that disclosure will harm the professional relationship with the child. (*Id.* at p. 827; see also Health & Saf. Code, former § 1795.14, subd. (a)(2).) No such issue is present here. R.R.'s or the other children's medical records are not implicated by the juvenile court's ruling.

D.  *Substantial Evidence Supported the Finding That R.R. Was a Person Described by Section 300*

Father contends the order sustaining paragraph b-8 of the petition is not supported by substantial evidence. He argues that evidence of his history of methamphetamine use as well as current use of alcohol, marijuana, cocaine and methamphetamine does not support the finding that he is incapable of providing regular care and supervision of R.R., or that his drug use endangers R.R.'s physical and emotional well being. We disagree.

Section 300, subdivision (b) provides that a child is subject to juvenile court jurisdiction if the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse." The initial determination in a child dependency proceeding that a parent is unfit is made by a preponderance of the evidence. (§ 355, subd. (a) ["Proof by a preponderance of evidence must be adduced to support a finding that the minor is a person described by section 300."]; *In re A.S.* (2009) 180 Cal.App.4th 351, 361 [102 Cal.Rptr.3d 642].) On appeal, "we review the record as a whole in the light most favorable to the court's order and we indulge every inference in favor of the court's decision so long as those inferences are ' "a product of logic and reason" and ". . . rest on the evidence" [citation]' not on 'mere speculation or conjecture.' [Citation.]" (*In re R.M.* (2009) 175 Cal.App.4th 986, 988–989 [96 Cal.Rptr.3d 655].)

In addressing father's point, we consider two cases in contrast. In *In re W. O.* (1979) 88 Cal.App.3d 906 [152 Cal.Rptr. 130] (*W. O.*), two infants were removed from their parents' home because cocaine and marijuana were discovered at the residence, in places not readily accessible by the children.

Other than the drugs, the children were receiving excellent care in the home, the home was well kept and adequately furnished; both parents were deeply concerned for their children and there was a warm and affectionate family relationship; witnesses testified that the parents did not appear to be under the influence. The appellate court concluded that this evidence did not support a finding that parental custody would harm the children. (*Id.* at pp. 908–909.) A remote possibility that the children might be endangered by the home environment was not sufficient reason to remove them from parental custody. (*Id.* at p. 911.) In *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 59, footnote 2 [156 Cal.Rptr. 262], the court observed that a father's alcoholism and reliance on welfare would not, by themselves, warrant a finding of dependency.

But in *In re Rocco M.* (1991) 1 Cal.App.4th 814, 825 [2 Cal.Rptr.2d 429], the court held that evidence that a mother exposed her 11-year-old son to the mother's own drug use, "thus impliedly approving such conduct and even encouraging him to believe that it is an appropriate or necessary means of coping with life's difficulties," was sufficient to support a finding that the child was a person described by section 300, subdivision (b).

■ Here, the evidence falls somewhere in between: Father had a long history of methamphetamine use; he was currently using methamphetamines; and his methamphetamine use led to his hospitalization. These facts distinguish this case from *W. O.* The juvenile court here could reasonably find that a parent—especially one who had had little contact with the minor—who uses methamphetamine, whose use of that drug had recently led to his hospitalization, and who lied to the social worker about his drug use has a compromised ability to care for his child, thus justifying the assumption of jurisdiction and the decision not to give immediate custody to father.

E. *Monitored Visits*

Father contends the juvenile court abused its discretion by ordering monitored visits. We disagree.

■ One of the dependency court's responsibilities is to define the rights of the parties to visitation by balancing the rights of the parent with the best interests of the child. (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757 [270 Cal.Rptr. 326].) We review an order setting visitation for abuse of discretion. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067 [24 Cal.Rptr.2d 654].) Given father's recent drug use and his efforts to keep that information from DCFS and the court, we cannot say the juvenile court abused its discretion in requiring monitored visits.

## DISPOSITION

The order is affirmed.

Bigelow, P. J., and Grimes, J., concurred.