[No. B214447. Second Dist., Div. Three. Sept. 22, 2009.]

MIRA R. MANELA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DAVID Y. MANELA, Real Party In Interest.

## COUNSEL

Gary J. Cohen for Petitioner.

No appearance for Respondent.

Law Offices of Alexandra Leichter, Alexandra Leichter; Law Offices of Ariel Leichter-Maroko and Ariel Leichter-Maroko for Real Party In Interest.

## OPINION

**KITCHING, J.**—This is a marital dissolution action brought by real party in interest David Y. Manela (father) against petitioner Mira R. Manela (mother). One of the principal issues in the case is whether father should be granted joint custody over the couple's four-year-old son, Jacob. In connection with that issue, father and mother became embroiled in a discovery dispute that is the subject of our opinion.

Mother contends that father has a "seizure" disorder that affects his ability to care for Jacob. Father denies mother's allegations and contends that he merely has a "tic" that is controlled by medication. Mother subpoenaed the medical records of two of father's physicians, Dr. Hart C. Cohen and Dr. Andrea H. Morrison, claiming that the records will support her allegations regarding father's seizures. The trial court, however, granted father's motion to quash the subpoenas on the ground that the documents were protected by the physician-patient privilege. Mother filed a petition for a writ of mandate requiring the trial court to vacate its order quashing the subpoenas.

■ We hold that the trial court abused its discretion by quashing the subpoena to Dr. Cohen because father waived the physician-patient privilege with respect to certain records of Dr. Cohen. We also reject father's claim that his medical records are protected by his constitutional right to privacy. As we will explain, that right is not absolute and, in this case, father's privacy interests are outweighed by the state's compelling interest in protecting Jacob's best interests. We further hold, however, that the trial court did not abuse its discretion with respect to quashing the subpoena to Dr. Morrison because the documents mother sought from Dr. Morrison were privileged.

## BACKGROUND

### 1. *Father's Alleged Medical Condition*

Mother claims that father suffers from regular "seizures" which last from 45 seconds to two and one-half minutes. The seizures usually occur when father awakens from sleep.[1] Although father does not lose consciousness when the seizures occur, mother claims the seizures cause father's head, neck, shoulders, and one arm to seize and that the seizures are "extremely loud and very frightening." Mother further claims that the seizures cause father to temporarily lose his ability to speak and often cause him to vomit. Father denies that he has a seizure disorder. Instead, father contends, he has a "tic" which is controlled by medication.

### 2. *Father's Divorce Petition and Application for an OSC Regarding Custody and Visitation*

On June 17, 2008, father filed a petition for dissolution of marriage. In his petition, father requested that custody of Jacob be awarded "consistent with the best interest of the minor child." In her response to father's petition, mother requested that the court award custody of Jacob to her alone.

On August 7, 2008, father filed an ex parte application for an order to show cause (OSC) regarding child custody and child visitation. In that application, father requested that he and mother be given joint physical custody. Father's application did *not* directly raise the issue of his alleged seizure disorder. Father, however, did state that mother's counsel advised him that if he sought custody of Jacob, mother would disclose certain information regarding father and his parents that would damage father's reputation in the Orthodox Jewish community and his professional reputation as a cardiologist. On August 7,

---

[1] In addition, mother stated in a declaration: "Several times, throughout our marriage, while driving during the day (not sleeping), David [father] has pulled over the car because he had an 'aura' of a seizure coming on or a speech arrest, generally when he was slightly sleepy." Mother did not claim that father has actually had a seizure while driving.

2008, in response to father's application for an OSC, mother filed a declaration regarding, inter alia, father's alleged seizure disorder.

On the same day, August 7, 2008, the court issued a "nonprejudicial" order regarding father's visitation rights. The court "temporarily" prohibited father from driving Jacob until it obtained more information regarding father's alleged seizure disorder. The court also scheduled a hearing on the OSC and a briefing schedule for the parties.

On August 12, 2008, mother filed another declaration which discussed father's alleged seizure disorder, as well as documents purportedly showing that father received prescriptions for Tegretol, which mother claimed is prescribed for seizures. Mother requested that father be allowed to visit Jacob three days a week, but not be allowed overnight visits and not be allowed to drive a vehicle with Jacob in it.

On August 13, 2008, father filed declarations in support of the OSC, including the declaration of Dr. Benjamin Gross, a neurologist. Dr. Gross stated in his declaration that he had treated father for the past nine years for hypnagogic movements, also known as a tic disorder. Dr. Gross further stated that father's condition has been controlled by Tegretol and that there was no neurological reason to restrict father's ability to drive an automobile or to prevent father from caring for Jacob.

On August 15, 2008, the court issued an order granting father and mother joint legal custody over Jacob. The court granted mother primary physical custody over Jacob and father secondary physical custody, specifying the days and nights on which Jacob would be with father. The court did not place any limitations on father's right to drive Jacob.

At the August 15, 2008, hearing, the court stated that the evidence was "quite clear that [father] does not suffer from seizures as the term is generally recognized to me . . . ." The court further stated that father's tics only occurred "when he's ready to go to bed. Presumably he's not about to go to sleep before he's put the child to bed. And even under anybody's characterization, the most it [the alleged seizure] lasts is about two and a half minutes, generally quite less. I don't see that it in any way impairs his [father's] ability to be involved, to have the child overnight . . . ." The court also found that there was no evidence that father's alleged disorder "impairs his ability to drive a car."

### 3. *Father's Motion to Quash Subpoenas*

On August 14, 2008, mother issued subpoenas to Dr. Cohen and Dr. Morrison. The subpoenas demanded that Dr. Cohen and Dr. Morrison produce "[a]ll medical records pertaining to David Manela."

On August 29, 2008, father filed a motion to quash the subpoenas and for a protective order and monetary sanctions. Father argued that the subpoenas should be quashed because the documents mother sought were protected by the physician-patient privilege.

In response to father's motion, mother alleged that the medical records she sought would support her allegations regarding father's alleged seizure disorder. Mother claimed that Dr. Morrison treated father for seizures when father was 11 years old and for several years thereafter. Mother also alleged that on August 29, 2007, Dr. Cohen examined father regarding his neurological condition and that she was present during the exam. Mother further alleged that at that exam, father stated to Dr. Cohen in her presence a detailed account of father's seizures. The trial court granted father's motion to quash the subpoenas.

### 4. *Mother's Petition for Writ of Mandate*

Mother filed a petition for writ of mandate requesting, inter alia, that we order the trial court to vacate its order granting father's motion to quash the subpoenas to Dr. Cohen and Dr. Morrison, and enter a new order denying that motion. On May 12, 2009, we issued an OSC regarding why the relief requested in the petition should or should not be granted. Both mother and father filed additional briefs supporting their respective positions.

### CONTENTIONS

Mother claims that father waived the physician-patient privilege by filing the declaration of Dr. Gross and by speaking about his medical condition to Dr. Cohen in the presence of mother. This waiver, mother argues, extends to father's privilege relating to Dr. Morrison. Mother also contends that the patient-litigant exception to the physician-patient privilege applies because father "tendered" the issue of his alleged seizure condition.

Father contends that the physician-patient privilege protects all of the documents mother seeks. Alternatively, father argues that the documents are protected by his right to privacy under the United States and California Constitutions.

### DISCUSSION

### 1. *Standard of Review*

"The standard of review for discovery orders is abuse of discretion. [Citation.] Abuse of discretion is a deferential standard of review." (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881 [94 Cal.Rptr.2d 505].)

### 2. *The Physician-patient Privilege*

■ "We begin with the premise that there can be no discovery of materials which are privileged." (*Palay v. Superior Court* (1993) 18 Cal.App.4th 919, 925 [22 Cal.Rptr.2d 839] (*Palay*).) The physician-patient privilege is codified in Evidence Code section 994,[2] which provides, in part, that "[s]ubject to Section 912 and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and physician if the privilege is claimed by: [¶] (a) The holder of the privilege . . . ." To the extent the physician-patient privilege applies, "it bars discovery of even relevant information." (*Palay, supra,* 18 Cal.App.4th at p. 926.)

### 3. *Father Waived the Physician-patient Privilege with Respect to Dr. Cohen, but Did Not Waive the Privilege with Respect to Dr. Morrison*

#### a. *Dr. Cohen*

Section 912, subdivision (a) provides, in part: "Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section . . . 994 (physician-patient privilege) . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone."

Section 992 provides: "As used in this article, 'confidential communication between patient and physician' means information, including information obtained by an examination of the patient, transmitted between a patient and his physician in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation or those to whom disclosure is *reasonably necessary* for the transmission of the information or the accomplishment of the purpose for which the physician is consulted, and includes a diagnosis made and the advice given by the physician in the course of that relationship." (Italics added.)

Here, father does not dispute that mother was present during his August 29, 2007, intake exam by Dr. Cohen, and that father consented to disclosure of at least a significant part of the communication between father and Dr. Cohen

---

[2] All statutory references are to the Evidence Code unless otherwise indicated.

on that date. Under section 912, subdivision (a) and section 992, mother's presence at the examination caused father to waive the physician-patient privilege, i.e., rendered father's communications with Dr. Cohen nonconfidential and unprivileged, unless mother's presence was reasonably necessary for Dr. Cohen's diagnosis and treatment of father. Although father argues that mother's presence was necessary, he offers no evidence supporting that assertion. Accordingly, father waived the physician-patient privilege with respect to Dr. Cohen's exam on August 29, 2007.[3]

■ Section 912, subdivision (c) provides that "[a] disclosure that is itself privileged is not a waiver of any privilege." Father argues that his disclosure to mother was itself privileged under the marital-communications privilege (§ 980),[4] and thus mother's presence at Dr. Cohen's exam did not constitute a waiver of the physician-patient privilege. The marital-communications privilege, however, cannot be invoked in "[a] proceeding brought by or on behalf of one spouse against the other spouse." (§ 984, subd. (a).) This is such a proceeding. Father's statements to Dr. Cohen in mother's presence therefore were not protected by the marital-communications privilege or the physician-patient privilege in this action.

### b. *Dr. Morrison*

■ Mother argues that father's waiver of the physician-patient privilege with respect to Dr. Cohen's and Dr. Gross's medical records also caused a waiver of the privilege with respect to Dr. Morrison's medical records.[5] However, we may not extend the waiver of privileges, including the physician-patient privilege, beyond the express limits of section 912. (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 586 [80 Cal.Rptr.3d 83, 187 P.3d 934].) In light of the important public policies underlying privileges, moreover, the scope of the waiver of a privilege is generally construed narrowly. (See *Fortunato v. Superior Court* (2003) 114 Cal.App.4th 475, 482 [8 Cal.Rptr.3d 82] [privilege against forced disclosure of tax return]; *2,022*

---

[3] The trial court will need to determine the precise scope of the waiver because we do not have all of the facts before us. For example, we do not know whether Dr. Cohen's documents contain facts gathered by Dr. Cohen outside the presence of mother.

[4] Section 980 provides: "Subject to Section 912 and except as otherwise provided in this article, a spouse (or his guardian or conservator when he has a guardian or conservator), whether or not a party, has a privilege during the marital relationship and afterwards to refuse to disclose, and to prevent another from disclosing, a communication if he claims the privilege and the com[m]unication was made in confidence between him and the other spouse while they were husband and wife."

[5] Father's counsel claims that he "tendered" Dr. Gross's medical records to mother. We do not address the waiver of the physician-patient privilege with respect to Dr. Gross because that issue is not before us. For purposes of this appeal we assume without deciding that the privilege was waived with respect to Dr. Gross.

*Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377, 1395 [7 Cal.Rptr.3d 197] [attorney-client privilege]; *San Diego Trolley, Inc. v. Superior Court* (2001) 87 Cal.App.4th 1083, 1092 [105 Cal.Rptr.2d 476] [psychotherapist-patient privilege]; *Transamerica Title Ins. Co. v. Superior Court* (1987) 188 Cal.App.3d 1047, 1052 [233 Cal.Rptr. 825] (*Transamerica*) [attorney-client privilege].)

Further, the scope of a waiver should be determined with reference to the purpose of the privilege. (*Jones v. Superior Court* (1981) 119 Cal.App.3d 534, 547 [174 Cal.Rptr. 148]; *Transamerica, supra,* 188 Cal.App.3d at p. 1052.) The physician-patient privilege has two purposes: " '(1) "to preclude humiliation of the patient that might follow disclosure of his ailments" [citations] and (2) to encourage the patient's full disclosure to the physician of all information necessary for effective diagnosis and treatment of the patient [citations].' " (*Binder v. Superior Court* (1987) 196 Cal.App.3d 893, 898 [242 Cal.Rptr. 231].)

In this case, father's interest in precluding his "humiliation" of disclosing his alleged medical condition to mother is belied by his voluntary disclosure to mother of his communications with Dr. Cohen and his filing of Dr. Gross's declaration. But the disclosure of father's communications with Dr. Cohen and Dr. Gross did not relate back to father's communications with Dr. Morrison many years earlier when father was a teenager. When father spoke to Dr. Morrison, father reasonably believed he could fully and freely discuss his medical condition. If we allow father's litigation adversary access to Dr. Morrison's records, father's interest in disclosing all necessary information to his treating physician will be undermined. We therefore hold that father's waiver of the physician-patient privilege with respect to Dr. Cohen and Dr. Gross did not also constitute a waiver of that privilege with respect to Dr. Morrison.

### 4. *Father Did Not Tender the Issue of His Alleged Seizure Disorder*

One exception to the physician-patient privilege is the patient-litigant exception. Section 996 provides: "There is no privilege under this article as to a communication relevant to an issue concerning the condition of the patient if such issue has been tendered by: [¶] (a) The patient . . . ." Mother claims that father tendered the issue of his seizure/tic disorder, and therefore father's communications with his physicians regarding that medical condition are not privileged. We disagree.

There are two grounds for the patient-litigant exception. "First, the courts have noted that the patient, in raising the issue of a specific ailment or condition in litigation, in effect dispenses with the confidentiality of that ailment and may no longer justifiably seek protection from the humiliation of

its exposure. Second, the exception represents a judgment that, in all fairness, a patient should not be permitted to establish a claim while simultaneously foreclosing inquiry into relevant matters." (*In re Lifschutz* (1970) 2 Cal.3d 415, 433 [85 Cal.Rptr. 829, 467 P.2d 557], fns. omitted.)

The patient-litigant exception usually arises in an action for personal injuries. A plaintiff seeking to recover damages arising out of a particular injury cannot claim the physician-patient privilege with respect to that injury because plaintiff's action tenders the issue. (*Province v. Center for Women's Health & Family Birth* (1993) 20 Cal.App.4th 1673 [25 Cal.Rptr.2d 667], disapproved on other grounds in *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 41 [32 Cal.Rptr.2d 200, 876 P.2d 999].)

A defendant, however, does not tender his or her medical condition by simply denying the plaintiff's allegations regarding the same. For example, in *Carlton v. Superior Court* (1968) 261 Cal.App.2d 282 [67 Cal.Rptr. 568] (*Carlton*), the plaintiff sued the defendant for personal injuries arising from the defendant's alleged negligent operation of an automobile. Although the defendant specifically denied in his answer that he was intoxicated while driving, he did not tender the issue of his alleged intoxication within the meaning of the patient-litigant exception. (*Id.* at p. 289.)

In *Koshman v. Superior Court* (1980) 111 Cal.App.3d 294 [168 Cal.Rptr. 558] (*Koshman*), the court addressed the issue of whether the patient-litigant exception applied in the context of a custody dispute between parents. After the mother was awarded custody of the parents' two children, the father moved to modify the custody order on the ground that the mother was hospitalized for treatment for an overdose of narcotics. The father sought medical records related to the mother's hospitalization. The court, however, held that the mother did not tender the issue of her alleged overdose, and thus the patient-litigant exception did not apply. (*Id.* at p. 298.)[6]

The present case is analogous to *Carlton* and *Koshman*. Like the defendant in *Carlton* and the mother in *Koshman*, father did not raise the issue of his tic/seizure disorder in his pleadings or his application for custody of Jacob. It was mother who first raised the issue in her response to father's application. Mother was also the first party to file evidence in connection with the issue. Father, by contrast, merely denied mother's allegations and submitted evidence in support of that denial.

---

[6] The *Koshman* court asked the Legislature to consider creating a best-interest-of-the-child exception to the physician-patient privilege. (*Koshman, supra*, 111 Cal.App.3d at p. 299, fn. 5.) The Legislature, however, has not created such an exception in the almost three decades since *Koshman* was decided.

Allowing father to invoke the physician-patient privilege does not raise the same concern for fairness that is raised in a typical personal injury case. It is grossly unfair to allow the plaintiff to pursue a claim for personal injuries without allowing the defendant to obtain medical records related to the alleged injuries. Here, by contrast, father does not seek custody of Jacob on the ground that he has a tic/seizure disorder. Indeed, if father had his way, his alleged disorder would not be an issue in the case. Father thus did not tender the issue of his alleged disorder within the meaning of section 996.

### 5. *Father's Right to Privacy Does Not Prevent Mother from Obtaining Dr. Cohen's Medical Records*[7]

■ Father claims that his medical records are protected by his right to privacy under the United States and California Constitutions. There is no question that medical records are highly sensitive materials that fall within the scope of the right to privacy. (See *Palay, supra*, 18 Cal.App.4th at p. 932; *Wood v. Superior Court* (1985) 166 Cal.App.3d 1138, 1147 [212 Cal.Rptr. 811].) The constitutional right to privacy, however, is not absolute. (*Palay*, at p. 933.) "It may be outweighed by supervening concerns. [Citation.] The state has enough of an interest in discovering the truth in legal proceedings, that it may compel disclosure of confidential material. [Citation.] '[A]n individual's medical records may be relevant and material in the furtherance of this legitimate state purpose . . . .' [Citation.] An 'intrusion upon constitutionally protected areas of privacy requires a "balancing of the juxtaposed rights, and the finding of a compelling state interest." ' " (*Ibid.*)

■ Here, the state has a compelling interest, namely promoting the best interests of Jacob. Indeed, it is the policy of this state that Jacob's best interest, including his health, safety and welfare, be the "primary concern" of the court in making orders regarding legal custody over Jacob. (Fam. Code, § 3020, subd. (a); see also Fam. Code, § 3011, subd. (a).) While father's alleged disorder does not per se disqualify him from obtaining custody of Jacob, even assuming all of mother's allegations are true, father's condition is certainly something the trial court can and should consider in determining what is in Jacob's best interest. (*In re Marriage of Carney* (1979) 24 Cal.3d 725, 736 [157 Cal.Rptr. 383, 598 P.2d 36] (*Carney*).)

In *Carney*, our Supreme Court held that a trial court abused its discretion in taking custody of a child away from a quadriplegic father. The court, however, stated: "We do not mean, of course, that the health or physical condition of the parents may not be taken into account in determining whose

---

[7] We do not reach the issue of whether father's right to privacy protects Dr. Morrison's records because we hold that those records are protected by the physician-patient privilege.

custody would best serve the child's interests. In relation to the issues at stake, however, this factor is ordinarily of minor importance; and whenever it is raised—whether in awarding custody originally or changing it later—it is essential that the court weigh the matter with an informed and open mind.

"In particular, if a person has a physical handicap it is impermissible for the court simply to rely on that condition as prima facie evidence of the person's unfitness as a parent or of probable detriment to the child; rather, in all cases the court must view the handicapped person as an individual and the family as a whole. To achieve this, the court should inquire into the person's actual and potential physical capabilities, learn how he or she had adapted to the disability and manages its problems, consider how the other members of the household have adjusted thereto, and take into account the special contributions the person may make to the family despite—or even because of—the handicap. Weighing these and all other relevant factors together, the court should then carefully determine whether the parent's condition will in fact have a substantial and lasting adverse effect on the best interests of the child." (*Carney, supra,* 24 Cal.3d at p. 736.)

In order to engage in the analysis called for by *Carney,* it is vitally important that the court have as much information as possible regarding father's alleged tic/seizure disorder and the extent to which, if at all, it will affect his ability to care for Jacob. While *Carney* stated that a parent's health and physical condition were "ordinarily" of minor importance, it did not state that this factor was *always* of minor importance. In this case, father's alleged disorder could be potentially significant. Mother stated in her declaration that Dr. Cohen opined that, in light of father's alleged disorder, father should not drive Jacob alone and that Jacob should not be left alone with father. We find that under the circumstances of this case, the state's interest in protecting the best interests of Jacob outweighs father's privacy interest in Dr. Cohen's medical records relating to father's tic/seizure disorder.

"However, determination of the nature of the compelling state interest does not complete the constitutional equation. [Citation.] An impairment of the privacy interest 'passes constitutional muster only if it is *necessary* to achieve the compelling interest.' " (*Palay, supra,* 18 Cal.App.4th at p. 934.)

The subpoena at issue here sought more information than was necessary to protect Jacob's best interests. Mother demanded that Dr. Cohen produce "all" medical records regarding father in his possession. In the record before us, mother has only shown good cause to obtain nonprivileged documents relating to father's tic/seizure disorder.

Furthermore, in light of father's allegations that mother seeks his medical records in order to damage father's professional reputation and his reputation

within the Orthodox Jewish community of Los Angeles, the trial court should consider first reviewing the documents in camera, or assigning that task to another judicial officer. The trial court should further consider issuing a protective order limiting the dissemination of father's private medical records.

## DISPOSITION

The May 12, 2009, OSC is discharged. Mother's petition is granted with respect to Dr. Cohen, but denied with respect to Dr. Morrison. The parties shall bear their own costs on appeal.

Klein, P. J., and Aldrich, J., concurred.