Filed 12/18/13  Avedikian v. State Farm Mut. Auto. Ins. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN AVEDIKIAN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant and Respondent. | F063595<br><br>(Super. Ct. No. 08CECG00311)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Alan M. Simpson, Judge.

Magill Law Offices and Timothy V. Magill for Plaintiff and Appellant.

Stammer, McKnight, Barnum & Bailey and Abigail R. Leaf for Defendant and Respondent.

-ooOoo-

John Avedikian appeals from a superior court judgment confirming an arbitration award in favor of State Farm Mutual Automobile Insurance Company (State Farm). Avedikian unsuccessfully petitioned the court to vacate the award pursuant to Code of

Civil Procedure section 1286.2.[1]  His attempts at post-arbitration discovery to uncover evidence in support of the petition were denied and he was sanctioned as a result.  He now seeks reversal of the judgment and the related discovery orders.

This case raises a number of issues stemming from allegations of bias, prejudice, and misconduct by the arbitrator who presided over the arbitration.  At the forefront of Avedikian's grievances is a claim that the arbitrator violated statutory and ethical duties to disclose potential grounds for disqualification at the outset of the proceedings.  In the end, all of his arguments devolve into a rather transparent attempt to re-litigate the merits of the underlying controversy, which is prohibited by the controlling standard of review.  We affirm in full.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Avedikian was involved in a rear-end collision in which his 1989 Chevrolet C1500 pickup truck was hit from behind by a 1995 Mercury Tracer.  He filed a claim for bodily injury against the adverse driver which was settled by the driver's insurance carrier for policy limits of $100,000.  Avedikian also received a much smaller payment for medical expenses pursuant to his own State Farm automobile insurance policy.

Avedikian later pursued an underinsured motorist claim with State Farm in relation to the subject collision.  Following a coverage dispute, the matter was submitted to private binding arbitration.  In April 2009, Avedikian's attorney sent a letter to State Farm's legal counsel which read, in pertinent part: "After much thought and research, I would propose the following three (3) persons as an arbitrator for the pending case…."  One of the proposed arbitrators was retired Tulare County Superior Court Judge

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2.

Howard R. Broadman (Judge Broadman). State Farm sent return correspondence agreeing to select Judge Broadman as the arbitrator.

In September 2009, Judge Broadman sent a four-page letter to the attorneys for Avedikian and State Farm. The letter was characterized as a disclosure statement intended to comply with applicable provisions of the Code of Civil Procedure and other authorities which exist to ensure the impartiality of those who serve as neutral arbitrators. Judge Broadman disclosed his prior service as an arbitrator in seven cases involving State Farm's legal counsel, Stammer, McKnight, Barnum & Bailey, LLP (Stammer McKnight). State Farm was identified as a party to four of the seven cases, plus two additional cases which did not involve Stammer McKnight.

For each of the nine prior arbitrations he disclosed, Judge Broadman identified the case name, the attorney for each plaintiff and defendant, the month and year of the arbitration, and the outcome, i.e., whether he ruled in favor of plaintiff or defendant. The disclosures did not include the amount of monetary damages awarded in each case as required by section 1281.9. Judge Broadman also indicated it would be difficult for him to research whether he had previously served as a mediator for the parties' attorneys, but he expressed a willingness to undertake such an investigation upon request. The letter further advised that although Judge Broadman did not have current arrangements with any party or attorney concerning prospective employment, he would entertain offers from the parties and their counsel while the arbitration was pending for employment as a dispute resolution neutral in other cases. Neither party objected to any portion of the disclosure statement.

Arbitration hearings were conducted in March, July, and September 2010. The parties' respective positions on factual and legal issues were outlined in briefs submitted to Judge Broadman over the course of the proceedings. Avedikian claimed to have suffered a traumatic brain injury caused by the 2003 motor vehicle collision which resulted in an array of physical and emotional problems. Although he acknowledged a

3.

prior history of significant head trauma from incidents dating back to 1981, Avedikian believed the 2003 event "caused him to go over the cliff" in terms of his medical condition. He estimated his total damages to be between $10,777,598 and $11,215,866.

State Farm disputed the existence of a causal connection between Avedikian's current complaints and the 2003 collision. It argued that at most the incident caused a temporary lumbar strain which had long since been resolved. State Farm's position was based upon Avedikian's medical records and the testimony of various experts and percipient witnesses, including Avedikian himself.

Judge Broadman found in favor of State Farm and awarded no damages to Avedikian. The arbitrator's 37-page decision, dated December 31, 2010, discusses Avedikian's lengthy history of head injuries and medical problems, and acknowledges the competing opinions of expert witnesses for both parties. The dispositive finding is summarized as follows: "Although Claimant's symptoms and deteriorating condition are not in doubt, Claimant has not met his burden of establishing that the 2003 accident was a substantial factor in bringing about those symptoms."

In March 2011, Avedikian filed a motion in the Fresno County Superior Court to vacate the arbitration award pursuant to section 1286.2. Avedikian's moving papers alleged bias on the part of Judge Broadman and a financial conflict of interest between the arbitrator, State Farm, and Stammer McKnight. Avedikian's arguments also focused on deficiencies in Judge Broadman's initial disclosure statement. The myriad grounds asserted in support of the motion are detailed in other parts of this opinion.

After moving to vacate the arbitration award, Avedikian issued subpoenas to Judge Broadman, State Farm, and Stammer McKnight demanding the production of financial records showing any payments by the latter parties to the arbitrator from January 2004 onward. State Farm moved to quash the subpoenas and requested discovery sanctions against Avedikian. Avedikian opposed the motion to quash and countered with his own request for sanctions.

In April 2011, the superior court issued an order denying Avedikian's request to vacate the arbitration award. The court found all asserted grounds for disqualification of the arbitrator and challenges to deficiencies in the initial disclosure statement had been waived by Avedikian's failure to make timely objections as required by the governing statutes. Additional reasons for denying the motion were stated as follows: "Petitioner fails to make a clear prima facie showing that the grounds he alleges in his motion are: (a) clearly supported by citations to evidence in the record, (b) are the legal equivalent of the permissible grounds set forth in CCP 1286.2 for challenging arbitration awards, and (c) are NOT improper requests that the trial court review the merits of the controversy, the validity of the arbitrator's reasoning, or the sufficiency of the evidence supporting the award."

In May 2011, the court issued a separate order granting State Farm's motion to quash the post-arbitration subpoenas. Sanctions were imposed against Avedikian in the amount of $490 for opposing the motion without substantial justification. A judgment was entered by the court in August 2011 confirming the arbitration award. This timely appeal followed.

## DISCUSSION

**Overview of Law and Standards of Review**

Contested uninsured/underinsured motorist claims are subject to binding arbitration under Insurance Code section 11580.2. (Ins. Code, § 11580.2, subd. (f); *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 341-342.) This is a form of contractual arbitration governed by the California Arbitration Act, i.e., Code of Civil Procedure section 1280 et seq. (*Briggs v. Resolution Remedies* (2008) 168 Cal.App.4th 1395, 1400.) Once the matter is submitted to arbitration, it is the province of the arbitrator to make all findings and rulings necessary for complete resolution of the dispute. (*Ibid.*; §§ 1282.2, 1283.4.) The prevailing party may thereafter initiate court

5.

proceedings to confirm the arbitrator's award and obtain an enforceable judgment. (§ 1285.)  The losing party may petition the court to vacate or modify the award.  (*Ibid*.)

Judicial review of an arbitration award is deferential to the arbitrator and strictly limited by statute.  (*Oaktree Capital Management, L.P. v. Bernard* (2010) 182 Cal.App.4th 60, 68.)  Confirmation of the award is mandatory unless a party can establish grounds for vacatur under section 1286.2 or correction under section 1286.6.  "Upon a petition seeking any of those results, the court *must confirm* the award, *unless* it either vacates or corrects it."  (*Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc*. (2000) 82 Cal.App.4th 648, 658, original italics.)

An arbitrator's award is strongly presumed to be valid.  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10-11 (*Moncharsh*); *National Marble Co. v. Bricklayers & Allied Craftsmen* (1986) 184 Cal.App.3d 1057, 1066 ["[B]oth the superior court and the appellate court must give every intendment of validity to an award…."].)  As a general rule, courts do not evaluate the merits of the controversy between the parties, the validity of the arbitrator's reasoning, or the sufficiency of evidence supporting the award. (*Moncharsh*, *supra*, 3 Cal.4th at p. 11; *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443.)  Even "the existence of an error of law apparent on the face of the award that causes substantial injustice" will not provide grounds for judicial interference.  (*Moncharsh*, *supra*, 3 Cal.4th at p. 33.)  "In other words, it is within the power of the arbitrator to make a mistake either legally or factually.  When parties opt for the forum of arbitration they agree to be bound by the decision of that forum knowing that arbitrators, like judges, are fallible."  (*Id*. at p. 12, quoting *That Way Production Co. v. Directors Guild of America, Inc*. (1979) 96 Cal.App.3d 960, 965.)

To succeed on a petition to vacate an arbitration award, the petitioner must show (1) the award was procured by corruption, fraud, or other undue means; (2) the arbitrator was corrupt; (3) misconduct by the arbitrator substantially prejudiced a party's rights; (4) the arbitrator exceeded his or her powers; (5) the arbitrator's refusal to postpone the

hearing or hear material evidence substantially prejudiced the rights of a party; or (6) the arbitrator failed to disclose a ground for disqualification or refused a timely demand to disqualify himself or herself. (§ 1286.2, subd. (a)(1)-(6); *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 534, fn. 2.)

The denial of a petition to vacate an arbitration award is reviewed de novo on appeal, including issues concerning the arbitrator's alleged failure to make required disclosures. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385-388 (*Haworth*).) The award is still entitled to deference and the presumption of validity. (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 541; *Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923 (*Betz*).) It is the appellant's burden to show the award is invalid under section 1286.2. (*Betz, supra*, 16 Cal.App.4th at p. 923.)

The quashing of a subpoena duces tecum is a discovery matter. Discovery orders are reviewed for abuse of discretion. (*Manela v. Superior Court* (2009) 177 Cal.App.4th 1139, 1145 (*Manela*).) "Where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court. [Citation.] The trial court's determination will be set aside only when it has been demonstrated that there was 'no legal justification' for the order granting or denying the discovery in question." (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1612.)

**Avedikian Forfeited His Objections to the Arbitrator's Initial Disclosure Statement**

Disclosure Requirements

Within 10 days of receiving notice of his or her nomination to serve as a neutral arbitrator, the proposed arbitrator is required to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." (§ 1281.9, subd. (a), (b); *Haworth, supra*, 50 Cal.4th at p. 381.) The subdivisions of section 1281.9 provide a list of potentially disqualifying information to which the parties are entitled. For example, the arbitrator

7.

must disclose "any ground specified in Section 170.1 for disqualification of a judge," as well as "matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council." (§ 1281.9, subd. (a)(1), (2); see Cal. Rules of Court, appen., div. VI, Ethics Stds. for Neutral Arbitrators in Contractual Arbitration (Ethics Standards).)

In particular, the initial disclosures must include "[t]he names of the parties to all prior or pending noncollective bargaining cases in which the proposed neutral arbitrator served or is serving as a party arbitrator for any party to the arbitration proceeding or for a lawyer for a party and the results of each case arbitrated to conclusion, including [1] the date of the arbitration award, [2] identification of the prevailing party, [3] the names of the parties' attorneys and [4] the amount of monetary damages awarded, if any." (§ 1281.9, subd. (a)(3).) The same information is required for all such cases in which the proposed nominee has served or is serving as a neutral arbitrator for any of the parties or their attorneys. (§ 1281.9, subd. (a)(4).)

Disqualification Procedures

The procedures for disqualifying an arbitrator are set forth in section 1281.91. If the arbitrator fails to provide initial disclosures as required by section 1281.9, he or she will be disqualified upon service of a "notice of disqualification" by any of the parties. (§ 1281.91, subd. (a).) The notice must be served "within 15 calendar days after the proposed nominee or appointee fails to comply with Section 1281.9." (*Ibid.*) Thus, if an arbitrator fails to provide an initial disclosure statement, or provides a statement that is deficient under section 1281.9, a party may disqualify the arbitrator as a matter of right by serving a timely notice of disqualification. (*Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1162-1163 (*Azteca Construction*).)

If a complete disclosure statement is provided, the parties may disqualify the arbitrator based on the information contained therein. Section 1281.91, subdivision (b)(1), provides that a proposed arbitrator "shall be disqualified on the basis of the

8.

disclosure statement after any party entitled to receive the disclosure serves a notice of disqualification within 15 calendar days after service of the disclosure statement." Subdivisions (a) and (b) of section 1281.91 confer "the unqualified right to remove a proposed arbitrator based on any disclosure required by law which could affect his or her neutrality…. As long as the objection is based on a required disclosure, a party's right to remove the proposed neutral by giving timely notice is absolute." (*Azteca Construction, supra*, 121 Cal.App.4th at p. 1163, citations omitted.)

The statutory scheme distinguishes between a "notice" of disqualification and a "demand" for disqualification. The former is akin to a peremptory challenge, while the latter is essentially a challenge for cause. (See *Jakks Pacific, Inc. v. Superior Court* (2008) 160 Cal.App.4th 596, 603.) A notice of disqualification can be based upon any subdivision of section 1281.9, results in automatic disqualification upon service, and is subject to a 15-day deadline. (§ 1281.91, subds. (a), (b).) A demand for disqualification can be made outside of the 15-day window upon the grounds specified in section 170.1 for disqualification of a judge. (§ 1281.91, subd. (d).) "If any ground specified in Section 170.1 exists, a neutral arbitrator shall disqualify himself or herself upon the demand of any party made before the conclusion of the arbitration proceeding." (*Ibid.*)

Waiver/Forfeiture

Subdivision (c) of section 1281.91 warns, "The right of a party to disqualify a proposed neutral arbitrator pursuant to this section shall be waived if the party fails to serve the notice pursuant to the times set forth in this section, unless the proposed nominee or appointee makes a material omission or material misrepresentation in his or her disclosure." However, the same provision states that "[n]othing in this subdivision shall limit the right of a party to vacate an award pursuant to Section 1286.2, or to disqualify an arbitrator pursuant to any other law or statute." The relevant cross-reference is to subdivision (a)(6) of section 1286.2: "[T]he court shall vacate the award if the court determines [the arbitrator] either: (A) failed to disclose within the time required

9.

for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision."

At first glance, the language of section 1286.2 arguably suggests that anything short of full compliance by the arbitrator with the disclosure requirements of section 1281.9 overrides the forfeiture provisions of section 1281.91. However, cases examining the interplay between these statutes hold that section 1286.2, subdivision (a)(6)(A) provides a remedy only to those parties who had no reason to know of the existence of a non-disclosed matter. (*Dornbirer v. Kaiser Foundation Health Plan, Inc*. (2008) 166 Cal.App.4th 831, 842-843 (*Dornbirer*); *Fininen v. Barlow* (2006) 142 Cal.App.4th 185, 190-191; see also, *Britz, Inc. v. Alfa-Laval Food & Dairy Co*. (1995) 34 Cal.App.4th 1085, 1096-1097 [reaching a similar conclusion under provisions of the Federal Arbitration Act (9 U.S.C. § 1 et seq.)].) The statute is designed to protect parties who have actually been deprived of the opportunity to make an informed decision to challenge the arbitrator on grounds of potential or actual bias.

The dispositive authority on this issue is the Fourth District's opinion in *Dornbirer*, *supra*. There, the arbitrator in a dispute between a patient and her medical provider (Kaiser) disclosed his prior participation in several matters involving Kaiser and its legal counsel. The disclosure statement omitted multiple pieces of information required under section 1281.9, including the number of times the arbitrator had presided over arbitrations in which Kaiser was a party, as well as the dates, results, and names of all attorneys involved in those arbitrations. The patient did not make further inquiry into these omissions, nor did she serve a disqualification notice or demand pursuant to section 1281.91. (*Dornbirer, supra,* 166 Cal.App.4th at pp. 836-837.)

After the arbitrator ruled in Kaiser's favor, the patient petitioned the superior court to vacate the award pursuant to section 1286.2. On appeal from the denial of her petition,

10.

the patient argued that any information contemplated by the provisions of section 1281.9 constitutes a "ground for disqualification" which must be disclosed by the arbitrator in order to avoid mandatory vacatur under section 1286.2, subdivision (a)(6)(A). (*Dornbirer*, *supra*, 166 Cal.App.4th at p. 842.) Kaiser argued the appellant's interpretation of the law "would have absurd results, in that a party could successfully move to have any arbitration award vacated if an arbitrator failed to disclose the amount of a single prior award or failed to provide the name of a single attorney involved in a prior arbitration." (*Ibid*.) The appellate court agreed with Kaiser.

*Dornbirer* holds that "the words 'failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware' in section 1286.2 refer to a failure to disclose the existence and nature of any relationship between the arbitrator and the parties or the parties' attorneys, not the specifics of each such relationship." (*Dornbirer, supra,* 166 Cal.App.4th at p. 842.) Although the arbitrator has a duty to comply with section 1281.9, the disclosure of past or present relationships constitutes inquiry notice of the potential for bias. (*Dornbirer, supra,* at p. 842.) The statutory scheme does not require an arbitration award to be vacated "when the arbitrator has generally disclosed the grounds for disqualification, i.e., his or her relationships and prior interactions with the parties to the arbitration and/or their attorneys, but has not provided all of the specific details required under section 1281.9, and despite the omissions, the parties agreed to go forward with the arbitration." (*Id*. at p. 846.)

Once informed of the arbitrator's connection to other participants in the arbitration, the parties can request additional information or exercise their rights under section 1281.91. What they cannot do is passively reserve the issue for consideration in subsequent court proceedings. If a failure to comply with section 1281.9 is readily apparent from the initial disclosure statement, the parties must take action to disqualify

11.

the arbitrator before the arbitration begins, not after it has ended.[2] (*Dornbirer, supra,* 166 Cal.App.4th at pp. 845-846.)

The matter before us is remarkably similar to the *Dornbirer* case. Judge Broadman's initial disclosure statement revealed a history of participating in multiple arbitrations with both State Farm and its attorneys. The details of those prior arbitrations were disclosed in accordance with section 1281.9, subdivisions (a)(3) and (a)(4), with the exception of the amount of any monetary damages awarded. The disclosure statement also contained the following disclaimer: "This disclosure does not include mediations which may have been conducted with the attorneys for both parties. My system does not easily afford this information. If either party requests complete disclosure of each mediation in conformity with the applicable code, I will undertake to locate all of the mediated cases. If no request is made any further disclosure is waived."

At no time prior to the conclusion of the arbitration did Avedikian serve a disqualification notice or demand pursuant to section 1281.91, nor did he make any inquiries regarding the possibility that Judge Broadman had previously conducted mediations with the parties' attorneys. Nevertheless, Avedikian petitioned the trial court to vacate the arbitration award pursuant to section 1286.2, subdivision (a)(6). Relying on the holding in *Dornbirer,* the trial court found all of Avedikian's objections to the deficiencies in Judge Broadman's disclosure statement had been waived.

---

[2] As explained in *Dornbirer*, it is knowledge of the existence and nature of a relationship between the arbitrator and the parties or the parties' attorneys that distinguishes this forfeiture rule from the holding in *International Alliance of Theatrical Stage Employees, etc. v. Laughon* (2004) 118 Cal.App.4th 1380 (*International Alliance*), which Avedikian cites and relies upon in his reply brief. In *International Alliance*, the appellate court refused to find waiver/forfeiture where an arbitrator failed to disclose "the very existence of a prior arbitration relationship, not simply the details of a prior arbitration." (*Dornbirer*, *supra*, 116 Cal.App.4th at p. 843, citing *International Alliance*, *supra*, 118 Cal.App.4th at pp. 1382-1383.) Curiously, Avedikian does not acknowledge the *Dornbirer* opinion anywhere in his briefing.

12.

The trial court's ruling was factually and legally sound. Judge Broadman's disclosure was incomplete, but he clearly revealed the existence of prior relationships and professional dealings with both State Farm and its attorneys. In light of the information provided, failure to include the amount of monetary damages awarded in past arbitrations and the lack of data regarding prior mediations did not constitute a material omission for purposes of section 1281.91, subdivision (c), or grounds to vacate the award under section 1286.2, subdivision (a)(6). (*Dornbirer, supra,* 166 Cal.App.4th at pp. 841-842, 845-846.)

Avedikian abandoned his right to object to the deficiencies in Judge Broadman's disclosure statement by failing to serve a disqualification notice or demand while the arbitration was pending. He cannot now be heard to complain that the arbitrator's statutory disclosures were inadequate from the outset. The procedural deadlines in section 1281.91 would be meaningless if parties were permitted to withhold such objections like an ace up their sleeve for use in the event of an adverse outcome, which is exactly what Avedikian appears to have attempted to do here. (*Dornbirer, supra,* 166 Cal.App.4th at p. 846.)

**Avedekian Failed to Make a Timely Demand for Disqualification Prior to the Conclusion of the Arbitration**

Separate from the initial disclosure issue is the allegation that Judge Broadman admitted bias against Avedikian during the arbitration proceedings. According to a declaration by Avedikian's attorney, Timothy Magill, the incident occurred on or about July 14, 2010, which would have been approximately ten months after Judge Broadman had been selected to serve as the parties' arbitrator and more than five months prior to the conclusion of the arbitration. Judge Broadman reportedly told the lawyers for both parties, "Mr. Magill has not paid all of my arbitration fees. I am not sure how that is going to [a]ffect my rulings in this case."

13.

It is impossible to tell if Judge Broadman was simply making a facetious remark to remind Mr. Magill that his bills had not yet been paid.  Taken literally, Judge Broadman's statement conveys concern about the potential impact of continued non-payment by Mr. Magill, but does not necessarily express a present doubt about his ability to be impartial.  State Farm's attorney later attested that she interpreted the comment to mean the arbitrator would be inclined to rule in Avedikian's favor so he would have money to pay the arbitration fees.  Avedikian, on the other hand, claims the incident immediately caused him to be concerned that Judge Broadman "would be biased, prejudiced, and unfair" in a manner adverse to his interests.

Had Avedikian been truly alarmed by the comment, he was not without recourse.  Section 1281.91 allows the parties to demand an arbitrator disqualify himself on the basis of any grounds set forth in section 170.1,[3] so long as the demand is made "before the conclusion of the arbitration proceeding."  (§ 1281.91, subd. (d).)  Avedikian made no attempt to disqualify Judge Broadman prior to the arbitrator's ultimate ruling in State Farm's favor.

Service of a demand for disqualification preserves the issue for consideration on a petition to vacate the arbitration award under section 1286.2.  The statute provides that the court "shall vacate the award" if it determines an arbitrator "was subject to disqualification upon grounds specified in Section 1281.91 but failed *upon receipt of timely demand* to disqualify himself or herself as required by that provision."  (§ 1286.2, subd. (a)(6)(B), italics added.)  It follows that a party who knows of a purported conflict of interest but unreasonably waits until after the arbitrator's award to bring it up should

---

[3] Under section 170.1, subdivision (a)(6)(A), an arbitrator is subject to disqualification if they believe there is "a substantial doubt as to his or her capacity to be impartial" or that a person aware of the facts might reasonably doubt their ability to be impartial.  Likewise, "[b]ias or prejudice toward a lawyer in the proceeding may be grounds for disqualification."  (§ 170.1, subd. (a)(6)(B).)

14.

be found to have forfeited the issue. The statutory requirement that a demand for disqualification be made before the end of the arbitration would be meaningless in the absence of such a forfeiture rule.

We find it unreasonable and inexcusable for Avedikian to have waited until after an award was made in favor of State Farm before raising the issue of the arbitrator's alleged admission of bias. "[I]t is inappropriate to allow any party to trifle with the courts by standing silently by, thus permitting the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable." (*Rebmann v. Rohde* (2011) 196 Cal.App.4th 1283, 1292, citations and internal quotation marks omitted; accord, *Caminetti v. Pac. Mutual L. Ins. Co*. (1943) 22 Cal.2d 386, 392 ["'It would seem ... intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.'"].) The trial court correctly concluded the issue was forfeited for purposes of the section 1286.2 petition.

**The Trial Court Did Not Abuse Its Discretion by Quashing the Post-Arbitration Subpoenas**

Avedikian's motion/petition to vacate the arbitration award was filed on or about March 7, 2011. He subsequently issued subpoenas to Judge Broadman, State Farm, and Stammer McKnight pursuant to sections 1985.3 and 1985.6. The subpoenas demanded the production of documents showing all payments made by Stammer McKnight and/or State Farm to Judge Broadman from "January 1, 2004 to present." The subpoenaed parties were also instructed to provide "a list of all cases with party name, attorney name, amount of settlement or award, [and the] date of hearing, [stating] whether Howard R. Broadman acted as an arbitrator, mediator, or other neutral, for all State Farm [cases] whether first or third party, from the time period of January 1, 2004 to the present."

15.

The trial court quashed the subpoenas. Among other explanations for its decision, the court found that because Avedikian forfeited his right to challenge the adequacy of Judge Broadman's initial disclosures, good cause did not exist to permit the discovery. We agree.

Sections 1985.3 and 1985.6 govern the compelled production of personal records and employment records by way of a subpoena duces tecum. Trial courts have broad authority under section 1987.1 to quash a subpoena or make "any other order as may be appropriate to protect the [subpoenaed party] from unreasonable or oppressive demands." (§ 1987.1, subd. (a).) As previously stated, such orders are reviewed under the abuse of discretion standard. (*Manela, supra*, 177 Cal.App.4th at p. 1145.)

Avedikian contends the requested information was discoverable for two reasons. First, he insists Judge Broadman was obligated to disclose the amount of money and fees he earned from State Farm and Stammer McKnight prior to and during the subject arbitration, and that without such information, "it was impossible to learn of the financial bias of [the] arbitrator." Second, Avedikian believes the information would have confirmed his suspicion that Judge Broadman was involved in other arbitrations and mediations with State Farm and Stammer McKnight over the 15-month period during which his own arbitration was pending. Citing the Ethics Standards, *supra*, and *Ovitz v. Schulman* (2005) 133 Cal.App.4th 830 (*Ovitz*), Avedikian claims Judge Broadman violated a continuing duty to disclose his participation in such matters. Both arguments are deeply flawed.

Avedikian fails to identify any statutes or rules that require an arbitrator to disclose the amount of money he or she has collected from various parties and attorneys as payment for arbitration or mediation services. This is not the type of information contemplated by the disclosure of a "financial interest" as that term is used in section 170.1 and in the Ethics Standards. The arbitrator is only required to disclose the existence of an ownership interest in a party or a financial stake in the subject matter of

the arbitration.  (§§ 170.1, subd. (a)(3), 170.5, subd. (b); Ethics Stds., stds. 2(i), 7(d)(9) & (10).)

It strains credulity for Avedikian to argue the subpoenas were issued "to determine whether or not Arbitrator Broadman was an owner in State Farm Insurance Company" since State Farm is mutually owned by its policy holders.  "The proprietary interest of a policyholder in a mutual insurance company, or a depositor in a mutual savings association, or a similar proprietary interest, is a 'financial interest' in the organization only if the outcome of the proceeding could substantially affect the value of the interest." (§ 170.5, subd. (b)(3).)  The record does not remotely suggest such a possibility even if it could be shown that Judge Broadman is a State Farm policy holder.

In addition to identifying the existence and nature of his relationships with State Farm and Stammer McKnight, a section of Judge Broadman's initial disclosure statement reads: "If any attorney or party to this arbitration desires more information about any of the matters disclosed in this letter, I will be happy to supply whatever is requested to the extent that the information sought is reasonably available and is not confidential, privileged or protected from disclosure…."  If Avedikian felt it was necessary to conduct the type of investigation his subpoenas were intended to facilitate, he should have taken Judge Broadman up on this offer upon receipt of the disclosure statement.  Thus, under the principles articulated in *Dornbirer, supra,* there was sufficient legal justification to quash the subpoenas.[4]

---

[4] A recent appellate decision emphasizes parties are not required to investigate a proposed neutral arbitrator in order to discover information the arbitrator is obligated to disclose. (*Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1313.)  As we have explained, Judge Broadman did not have a statutory or ethical duty to provide the financial information Avedikian attempted to obtain through the subpoena process.  The aforementioned case also acknowledges the import of the *Dornbirer* opinion: "if the arbitrator disclosed information or a party had actual knowledge of information putting the party on notice of a ground for disqualification, yet the party failed to inquire further, the arbitrator's failure to provide

As for Judge Broadman's alleged involvement in other matters with State Farm and its attorneys while the arbitration was pending, Avedikian ignores key provisions of the Ethics Standards and misstates the holding in *Ovitz*, *supra*. Standard 12 provides that a proposed nominee "must disclose to all parties in writing if, while that arbitration is pending, he or she will entertain offers of employment or new professional relationships in any capacity other than as a lawyer, expert witness, or consultant from a party or a lawyer for a party, including offers to serve as a dispute resolution neutral in another case." (Ethics Stds., std. 12(b).) "A party may disqualify the arbitrator based on this disclosure by serving a notice of disqualification in the manner and within the time specified in Code of Civil Procedure section 1281.91(b)." (*Ibid*.)

Standard 7 allows the arbitrator to serve as a dispute resolution neutral in other cases if the parties do not make a timely objection to such activity. "If an arbitrator has disclosed to the parties in an arbitration that he or she will entertain offers of employment or of professional relationships from a party or lawyer for a party while the arbitration is pending as required by subdivision (b) of standard 12, *the arbitrator is not required to disclose to the parties in that arbitration any such offer from a party or lawyer for a party that he or she subsequently receives or accepts while that arbitration is pending*." (Ethics Stds., std. 7(b)(2), italics added.) The *Ovitz* opinion confirms the plain meaning of this language: "The continuing duty to disclose service in another pending case involving the parties or their lawyers (std. 7(d)(4)(A)(i)) is obviated if the arbitrator has made the disclosure of his intent to entertain such offers as required by standard 12(b)." (*Ovitz*, *supra*, 133 Cal.App.4th at p. 840.)

Judge Broadman informed the parties in writing of his willingness to "entertain offers of employment from a party or an attorney for a party in this arbitration while it is

---

additional information regarding the same matter does not justify vacating the award." (*Id*. at pp. 1313-1314.)

pending, including offers to serve as an arbitrator, mediator, or other dispute resolution neutral in another case." He therefore complied with the requirements of standard 12(b). Avedikian could have disqualified the arbitrator on the basis of this disclosure, but forfeited his right to do so by failing to serve a timely notice of disqualification. As a result, Judge Broadman was free to accept additional offers of employment as a dispute resolution neutral from State Farm and/or Stammer McKnight, and was under no obligation to provide Avedikian with any information about the existence or details of such arrangements. (Ethics Stds., std. 7(b)(2); *Ovitz*, *supra*, 133 Cal.App.4th at pp. 839-841.)

In light of these facts, the trial court was well within in its discretion to conclude Avedikian's discovery demands were unreasonable. The same is true of its decision to impose sanctions against Avedikian for opposing the motion to quash without substantial justification. We have no cause or inclination to overturn either ruling.

**There Is No Evidence of Improper Ex Parte Communications**

An arbitration award is invalid if procured by "corruption, fraud or other undue means." (§ 1286.2, subd. (a)(1).) Improper ex parte communications between an arbitrator and parties or attorneys involved in the arbitration can provide the basis for such a finding. (*Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 825.) However, "[i]n the absence of a showing that the arbitrator was improperly influenced or actually considered evidence outside the original arbitration proceedings…appellants cannot demonstrate that the [award] was procured by corruption, fraud, undue means, or misconduct of the arbitrator within the meaning of section 1286.2 [subdivision (a)]." (*A.M. Classic Construction, Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470, 1476.)

Avedikian's allegations of improper ex parte communications between Judge Broadman and State Farm's legal counsel are based upon a declaration submitted by his sister, Jane Tamberi. Ms. Tamberi declared: "That during recesses during the arbitration,

19.

I was present when arbitrator Broadman would talk with [an attorney for State Farm] about the remodeling of his office and the problems he was having with getting the interior decorating completed. He also spoke about having to find an interior decorator and how much money it was costing him. He further asked if [the attorney] was aware of anyone that could help him with either a general contractor or an interior decorator."

Improper ex parte contact generally involves "communication by counsel to the decisionmaker of information relevant to issues in the adjudication." (*Mathew Zaheri Corp. v. New Motor Vehicle Bd.* (1997) 55 Cal.App.4th 1305, 1317.) What Ms. Tamberi describes in her declaration is nothing more than casual conversation about a topic completely unrelated to the subject matter of the arbitration. Avedikian fails to show the alleged communications were improper, much less prejudicial.

**Avedikian's Remaining Arguments Fail To Establish Grounds For Reversal Under Section 1286.2**

"Courts do not review arbitration awards for factual or legal errors, including sufficiency of the evidence or reasoning of the arbitrator." (*Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 157 (*Evans*), citations omitted; accord, *Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775-776.) Therefore, we will not entertain or discuss Avedikian's repeated protestations that the arbitrator misconstrued applicable law and applied faulty reasoning to the underlying facts. Avedikian claims erroneous application of law to the facts is evidence of bias and misconduct on the part of Judge Broadman, but this is a convoluted argument seemingly designed to avoid the controlling standard of review. The true crux of his assertions is that the arbitrator did not properly interpret the evidence. It is well settled, however, that "[a]n arbitrator does not exceed his or her powers by making a legal or factual error or by giving erroneous reasons for an award." (*Harris v. Sandro* (2002) 96 Cal.App.4th 1310, 1313.)

Equally misguided are the arguments relating to Judge Broadman's admission of certain scientific studies and opinions proffered by State Farm's expert witnesses despite

20.

Avedekian's objections and motions to exclude such evidence. "Courts have repeatedly instructed litigants that challenges to the arbitrator's rulings on discovery, admission of evidence, reasoning, and conduct of the proceedings do not lie." (*Evans*, *supra*, 134 Cal.App.4th at p. 167; see also, Cal. Rules of Court, rule 3.824(a)(5) [arbitrator has the power to "rule upon the admissibility and relevancy of evidence offered"].) An arbitrator's refusal to hear material evidence is grounds for vacating the award, but the admission of one party's evidence over the objections of another is not a decision that is subject to judicial scrutiny. (§ 1286.2, subd. (a)(5); *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1110 (*Schlessinger*).)

Avedekian's discussion of the holding in *Burlage v. Superior Court* (2009) 178 Cal.App.4th 524 (*Burlage*) is not helpful to his position. In *Burlage*, the Second District vacated an arbitration award pursuant to 1286.2, subdivision (a)(5), because the appellants' rights were substantially prejudiced by the arbitrator's refusal to hear material evidence that would have had a dispositive impact on the dispute. (*Burlage*, *supra*, 178 Cal.App.4th at pp. 529-530.) Avedikian has not shown that Judge Broadman refused to hear material evidence or that such a refusal caused him substantial prejudice.

Avedikian pays lip service to section 1286.2, subdivision (a)(5), by arguing he was "substantially prejudiced by the refusal of the arbitrator to allow additional responses to Dr. Sean Shimada's response by John Brault when he added and provided new and additional material that he was unaware that he was going to do." This statement refers to State Farm's biomechanical expert, Sean Shimada, Ph.D., and a "rebuttal declaration" submitted by Dr. Shimada wherein he addressed the opinions of Avedekian's biomechanical expert, John Brault, M.S. Avedekian essentially claims his expert, Mr. Brault, should have been allowed to prepare a 'rebuttal to the rebuttal.' However, we find no evidence that such a request was ever made.

Elsewhere in his briefing, Avedikian states: "Although Claimant/Appellant's attorney agreed to allow Dr. Shimada's Reply, there was no agreement he could

introduce four (4) new articles and three (3) different portions of textbooks. If Claimant/Appellant had been aware of this, he would have objected and precluded him from doing that, or been allowed to at least have John Brault the opportunity to respond to the articles as to how they did or did not apply to this case." If Avedekian actually requested and was denied permission to submit additional evidence, the briefing does not cite to any evidence of that fact. "Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.) This is especially true in the present matter considering the record on appeal consists of over 9,000 pages and in light of the trial court's chastising of Avedikian for filing a petition that "provides no citations to any transcript or record of the proceedings, and provides no citations to documents, briefs, the arbitrator's ruling, or the exhibits… [to support the allegation] that competent and material evidence was excluded."

In any event, Judge Broadman found the testimony of both biomechanical experts, i.e., Dr. Shimada and Mr. Brault, to be inconclusive. He explained: "[T]he parties' biomechanics experts disagree on the appropriate measure of acceleration to be used, the threshold for injury using either measure, whether Claimant's head struck the rear window of his pickup, and whether it is more appropriate to derive the various measures of force, acceleration and torque based on computation or observation of staged collisions. The Arbitrator is not satisfied that either party has offered conclusive expert testimony on this topic." Assuming arguendo that Judge Broadman refused to hear evidence refuting matters set forth in Dr. Shimada's declaration, Avedikian has not carried his burden to show his rights were substantially prejudiced as a result.

It should be noted that refusing to hear evidence is not the same as failing to consider evidence. Many of Avedekian's arguments are based on the contention that Judge Broadman ignored the evidence presented. "Legally speaking the admission of evidence is to hear it, and the weighing of it is to give it consideration." (*Gonzales v.*

22.

*Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 63.) Failure to consider evidence is not grounds to vacate the award under section 1286.2. (*Ibid.*) This is not to say we would otherwise agree with Avedikian's allegations. In reading Judge Broadman's 37-page decision, it appears he considered volumes of evidence submitted by both parties.

We also reject the argument that Judge Broadman committed reversible misconduct by requiring Avedekian's attorney to complete a portion of his cross-examination of a defense expert through live video conferencing. The parties to an arbitration are entitled to be heard, to present evidence, and to cross-examine witnesses who appear at the arbitration hearing. (§ 1282.2, subd. (d).) The arbitrator otherwise has broad discretion to control how the proceedings are conducted. (§ 1282.2, subd. (c); *Evans*, *supra*, 134 Cal.App.4th at p. 164; see also, *Schlessinger, supra,* 40 Cal.App.4th at pp. 1105-1107.) Avedikian provides no authority for the proposition that parties have a right to cross-examine witnesses "in the flesh" rather than over a video screen.

Substantial prejudice exists within the meaning of section 1286.2 when the arbitrator has prevented a party from fairly presenting its case. (*Schlessinger, supra,* 40 Cal.App.4th at pp. 1110-1111; *Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 438-439.) The requisite showing has not been made to justify vacating the arbitrator's award on these grounds. As respondent points out, Avedikian's attorney spent approximately four hours cross-examining State Farm's retained neurologist, Lorne Label, M.D., and concluded the examination by telling the arbitrator he had no further questions for the witness. Requiring a portion of the questioning to occur by way of video conferencing did not violate Avedikian's right to fairly present his claims or his right to cross-examine the opposing party's experts.

Finally, Avedikian's argument that Judge Broadman failed to determine all issues in dispute is a non sequitur. He submits there is an outstanding question as to the amount of monetary damages he is entitled to receive which was left unanswered by the arbitrator's decision. Judge Broadman did not reach this issue because he concluded the

23.

underlying motor vehicle accident was not the legal cause of Avedikian's alleged injuries.

An arbitrator's failure to determine all questions necessary to resolve the dispute, as required by section 1283.4, is grounds for vacating an arbitration award under section 1286.2 as an act in excess of the arbitrator's powers. (*Mossman v. City of Oakdale* (2009) 170 Cal.App.4th 83, 88.) The requirements of section 1283.4 refer "to the determination of each issue that is necessary for the ultimate decision of the arbitrator." (*Cothron v. Interinsurance Exchange* (1980) 103 Cal.App.3d 853, 859.) "It is not the finding on issues that is required; it is the determination thereof when 'necessary in order to determine the controversy.'" (*Id*. at p. 860.)

We do not understand the basis for Avedikian's argument that causation was admitted by State Farm and, therefore, the nature and extent of damages was the only issue in dispute during the 15-month arbitration process. Avedikian's written submissions to the arbitrator characterized State Farm's position on causation as "the hocus pocus defense" and criticized its "magical hocus-pocus-type of analysis" of the issue. It is clear to this Court that causation was a contested issue and the arbitrator's findings and decision determined all questions necessary to resolve the parties' dispute. Consequently, there are no grounds to vacate the arbitration award under section 1286.2.

## **DISPOSITION**

The judgment confirming the arbitration award is affirmed.  The trial court's orders quashing the post-arbitration subpoenas and imposing discovery sanctions are also affirmed.  Costs on appeal are awarded to respondent.

_____
Gomes, J.

WE CONCUR:


_____
Levy, Acting P.J.


_____
Oakley, J.

25.